# Richmond.

## DAVIDSON v. ALLAM.

### November 12, 1925.

1. ASSAULT AND BATTERY—*Assault by Officer Making Arrest—Force Necessary—Damages—Malice—Questions of Law and Fact.*—In an action for an assault by an officer in making an arrest, the issue raised by the pleadings and the evidence was whether the defendant used more force than was reasonably necessary under all the circumstances. This question was for the jury, under proper instructions by the court, and a verdict by the jury, if properly instructed, disposed of the conflict in the evidence. A verdict for defendant would be equivalent to a finding that the officer was justified in using the force he did use, and a verdict for plaintiff would mean that the officer had used more force than was necessary, and in fixing the amount of the latter verdict the jury would also have to determine whether the assault was a result of a transport of passion, or whether the defendant had some ill feeling toward plaintiff and took advantage of the occasion to vent his malice upon him.

2. ARREST—*Force Necessary in Making Arrest.*—Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests, to prevent escapes, and to deliver prisoners where they are required by law or by warrant to deliver them.

3. ARREST—*Force Necessary in Making Arrest—Protection of Officers.*—When acting in good faith, the courts will afford officers making arrests the utmost protection, and they will recognize the fact that emergencies arise when they are not expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court.

4. ARREST—*Force Necessary in Making Arrest—Officers Animated by Anger or Malice—Amount of Recovery.*—When the actions of officers in making arrests are animated by anger or malice, they subject themselves to liability if they inflict injury upon one under arrest, for actual damage, where the injury is inflicted because of anger resulting from provocation, and for punitive damages where the injury is inflicted through malice. In other words, in case of a right to recover at all, the motive would materially affect the amount of recovery.

5. ARREST—*Assault by Officer—Instructions—Prisoner's Request to Permit Him to Go to the Office of Attorneys—Case at Bar.*—In the instant case, an action for an assault by an officer upon one under arrest, the court instructed the jury that the plaintiff had the right to request the defendant to permit him to go to the office of the attorneys for the town to talk with them concerning the charges against the plaintiff, and that defendant had no right to assault plaintiff merely because of such request. The officer was under no duty or obligation to carry the prisoner to the office of the attorneys for the town, but it was his duty to take him to the mayor's office as the warrant directed. The real issue in the case was whether the defendant used more force than was reasonably necessary under the circumstances in delivering the prisoner at the mayor's office.

*Held:* That the instruction should have been confined to this issue, and therefore the court erred in giving the instruction. The vice of the instruction was further demonstrated by the fact that the refusal of the defendant to permit the plaintiff to go to the law office of the attorneys was played on in the trial of the case.

6. *Arrest—Assault by Officer—Instructions—Prisoner's Request to Permit Him to Go to the Office of Attorneys—Case at Bar.*—In the instant case, an action for an assault by an officer upon one under arrest, the court instructed the jury that the plaintiff had the right to request the defendant to permit him to go to the office of the attorneys for the town to talk with them concerning the charges against the plaintiff, and that defendant had no right to assault plaintiff merely because of such request. This was prejudicial to the defendant because once the jury was told that the plaintiff had a right to make the request, the conclusion would naturally follow, not only that defendant should have permitted plaintiff to go, but that he assaulted him because he asked to be permitted to go. The evidence disclosed that the request to be allowed to go to the office of the attorneys was a mere incident which had its place among the circumstances which led up to the difficulty, but there was not a shred of evidence that it was the sole cause of the assault. The instruction suggests to the jury that it may have been the sole cause of the assault and thus overemphasizes a mere incident to the prejudice of the defendant.

7. ASSAULT AND BATTERY—*Assault by Officer—Instructions—Mitigating or Extenuating Circumstances—Case at Bar.*—In an action for an assault by an officer, the court instructed that even if the jury believed that the plaintiff used offensive or insulting words, still that alone could in no manner justify or excuse the defendant for assaulting the plaintiff. This was objected to by the defendant because it left out of view extenuating or mitigating circumstances arising out of the conduct of the plaintiff.

*Held:* That extenuating circumstances was a matter of defense, and

if defendant desired to set it out he should have asked an instruction of his own, or a modification of the instruction given.

8.  INSTRUCTIONS—*Request—Duty of Counsel.*—Where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission, by an appropriate request, or be precluded from making such failure available as reversible error. The rule is also well settled that a party must, if he desires them, request the court to give more definite or more specific or fuller instructions. Likewise, where the court has stated a general rule of law correctly, if a party desires the jury to be informed respecting the limitation thereof, he should request the court so to charge.

9.  ASSAULT AND BATTERY—*Assault by Officer—Witnesses—Opinion Evidence—Case at Bar.*—In the instant case, an action for assault by an officer, plaintiff testified that several months previous to the difficulty he had borne witness against a brother of the officer, and that the officer for this reason was "mad at him."

   *Held:* That it was competent for the witness to testify that he had been a witness in a case against the brother of defendant, and that it was not competent for him to give his conclusions as to the effect of his having so testified upon the defendant.

10.  ASSAULT AND BATTERY—*Evidence—Motive for the Assault.*—Any circumstances tending to show or throw light on the motive for an alleged assault is permissible.

Error to a judgment of the Circuit Court of Wise county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*Morton & Parker, John W. Chalkley,* and *E. M. Fulton,* for the plaintiff in error.

*O. M. Vicars,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This was an action for damages by notice of motion,

brought by S. A. Allam against C. L. Davidson, in which the plaintiff in the trial court, Allam, charged that the defendant, Davidson, "in the town of Appalachia, in Wise county, Va., with force and arms assaulted S. A. Allam and with great force and violence laid hold of said Allam and then and there struck undersigned a great many violent blows on and about the head and face   *   *   * .  Wherefore the undersigned *   *   *   hath sustained damages in the sum of $5,000.00, etc."

The notice of motion gives no details of the alleged assault, but the grounds of defense filed by the defendant and the evidence disclose that Davidson was town sergeant of the town of Appalachia; that at the time of the alleged assault he had Allam under arrest, having just arrested him under a warrant charging him with drunkenness and with carrying a concealed weapon, and was undertaking to deliver him at the mayor's office where the warrant required the officer to deliver his prisoner.

Davidson pleaded the general issue "not guilty" to the charges in the notice of motion for judgment, and filed, in writing, the following grounds of defense:

1. That the damage and injury complained of by plaintiff was caused by said plaintiff's own wilful misconduct and illegal resistance of a lawful arrest then and there made by the said C. L. Davidson.

2. That the alleged injuries suffered by plaintiff were justifiable and excusable by defendant in his official capacity as sergeant of the town of Appalachia, in the lawful arrest of the said plaintiff and with only such reasonable force as was made necessary by the plaintiff's action in the resistance of lawful arrest and in defendant's own necessary self-defense; and

3. That the injuries received by the said plaintiff

were caused by the said plaintiff's own contributory negligence and unjustified assault upon defendant while said defendant, as sergeant of the town of Appalachia, acting under legal warrant, had plaintiff under arrest, said plaintiff, then and there, while under legal arrest by said defendant, cursed and abused said defendant, striking said defendant in and about his face and body, and it became and was necessary for the said defendant to strike and subdue the said plaintiff to properly defend himself and to prevent the said plaintiff from inflicting serious bodily injury upon him, and to perfect the legal arrest of said plaintiff, using only such force as was reasonably necessary to accomplish said arrest and to protect himself from bodily injury at the hands of said plaintiff.''

The evidence as to what brought about the difficulty between the parties is conflicting.

The defendant testified that when he met plaintiff and put him under arrest, the latter jerked the warrant out of his hand, and he had to make him give it back to him; that he kept insisting, as he was carried to the mayor's office, that he be carried by the law office of Morton and Parker, attorneys for the town, to arrange for his trial; that he was plainly drunk or drinking at the time of the arrest, and when told by defendant that he would carry him to the mayor's office, he left the sidewalk, started for Morton and Parker's office, declaring that he would not go anywhere with defendant. The officer, defendant, says he took hold of his arm and carried him on for some distance, when he broke loose again, hit the officer three times in the face and neck with his fist, grabbed him in the shirt collar and cursed him, using a vile epithet; that thereupon defendant struck him two or three times on the head with a stick he carried in his hand for a walking stick.

The officer declares he hit defendant only to stop him from fighting him and to accomplish his arrest. There was evidence to corroborate all the material statements of the defendant.

On the other hand, the plaintiff, while he admitted that he insisted all along, as he was being carried to the mayor's office, that he be taken by, or allowed to go by, the law office of Morton and Parker, claims he made no attempt to break away and go, or to strike the officer, but that he started to go and leaned in that direction, and that thereupon the defendant assaulted him with the cue stick, striking him three or four times over the head, cutting his scalp and causing him considerable loss of blood, illness, incapacity, etc. In his examination-in-chief, the plaintiff testified to the effect that the defendant assaulted him because he was "mad at me," and "naturally wanted to beat me up because I swore against his brother."

[1] It is obvious from what has been said that the real issue in the case raised by the pleadings and the evidence was whether the defendant used more force than was reasonably necessary, under all the circumstances of the case, in delivering the prisoner at the mayor's office, where the warrant required him to be delivered and where it was his plain duty to deliver him.

It devolved upon the jury, under the evidence in the case, and instructions from the court which should have been confined to the real issue, to answer this question. If properly instructed, a finding for the defendant would dispose of the conflict in the evidence and would be equivalent to a finding that the officer was justified in using the force he did use in performing his duty in view of the resistance by the prisoner and his attack upon the officer. On the other hand, a

verdict for the plaintiff would mean a finding that the officer had used more force than was necessary, and in fixing the amount of the verdict the jury would also have to determine whether the assault was the result of a transport of passion resulting from the alleged vile epithets applied to the defendant, or whether the defendant had some ill feeling toward plaintiff and took occasion while he had him under arrest to vent his malice upon him.

[2] Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests, to prevent escapes, and to deliver prisoners where they are required by law or by warrant to deliver them.

[3] When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when they are not expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court.

[4] When their actions are animated by anger or malice, they subject themselves to liability if they inflict injury upon one under arrest, for actual damage, where the injury is inflicted because of anger resulting from provocation, and for punitive damages where the injury is inflicted through malice. In other words, in case of a right to recover at all, the motive would materially affect the amount of recovery.

The trial resulted in a verdict of $2,000 for the plaintiff, upon which the court entered judgment. From this judgment a writ of error was allowed to this court.

The errors assigned are to the admissibility of evidence and granting certain instructions for the plaintiff.

[5, 6] The most serious question raised is as to in-

struction No. 2, given for the plaintiff, which is as follows:

"2. The court further instructs the jury that the plaintiff had the right to request the defendant to permit him to go to the office of Morton and Parker, attorneys, to talk with them concerning the charges against the plaintiff, and that the defendant had no right to abuse or assault the plaintiff merely because he desired and requested to be allowed to go to the office of Morton and Parker and consult with them or either of them with reference to said charges."

We have heretofore pointed out the real issue or issues in the case. The instructions should have been confined to those issues.

In our opinion the court erred in giving this instruction.

That the officer was under no duty or obligation to carry the prisoner by, or permit him to go by, the office of Morton and Parker, but that it was his duty to take him to the mayor's office as the arrest warrant required, are propositions of law too fundamental to require citation of authority to support them.

The instruction is based upon the theory that the alleged assault was made because the plaintiff asked the defendant to permit him to go by the office of Morton and Parker. Not only is there no evidence in the record to support such a theory, it being a mere inference which reasonable minds cannot accept as true, but the instruction is misleading to the jury in a most subtle way, in that it apparently bases the whole of plaintiff's right of recovery on his right to ask that he be carried by the office of Morton and Parker. It is so obviously true that he had the right to make the request, even to the lay mind, that any conclusion based on such a premise, either embraced within the

language of the instruction, or reasonably inferred therefrom, would almost inevitably be seized upon by a jury as a solution of all difficulties before them.

In addition to this, as heretofore shown, and as will later appear in the last assignment of error discussed, the plaintiff himself assigned as the reason the defenddant assaulted him, that he was "mad at him," "had it in for him," and gave as a reason for his theory that he had testified against defendant's brother.

So, it seems to us that once the jury was told that the plaintiff had a right to make the request, the conclusion would naturally follow, not only that defendant should have permitted plaintiff to go, but that he assaulted him because he asked to be permitted to go. The whole evidence discloses that the request to be allowed to go by Morton and Parker's office was a mere incident that had its place among the circumstances that led up to the difficulty, but there is not a shred of evidence that it was the sole cause of the assault. The instruction suggests to the jury that it may have been the sole cause of the assault and thus overemphasizes a mere incident to the prejudice of the defendant.

The vice of the instruction is further demonstrated by the fact that the refusal of the defendant to permit the plaintiff to go by Morton and Parker's law office was played on in the trial of the case, mere incident though it was, in such a way as to excite sympathy for the plaintiff and prejudice against the defendant.

The cross examination of the defendant on that subject illustrates the point:

"Q. Mr. Davidson, why didn't you let him go over there and see Morton and Parker, they were representing the town?

"A. Because he was a prisoner, it is not customary to take them to the office of Morton and Parker.

"Q. If you have a man arrested on a little misdemeanor in your town and he requests you to let him speak to the town attorney representing the town, or an official of the town, is it your habit to refuse to permit him to do so?

"A. If they want to speak to an attorney and I have them in custody, I generally take them to the town hall and call the attorney, get any attorney that they want, if convenient.

"Q. You were passing by their office on the opposite side of the street, and you knew they were the attorneys representing the town in these matters, and Mr. Allam requested you or stated to you that he wanted to go across and see them about this case, why didn't you go across with him or let him go over and talk to them about this matter?

"A. Because that has not been my custom in handling the business.

"Q. Although you may be passing by an attorney's place with a man on a mere charge of misdemeanor who wants to speak to an attorney, you say your habit is to take them to jail?

"A. If he wanted Morton and Parker I either go to their office or call them over the phone.

"Q. Why didn't you let him go across and speak to them?

"A. Under the conditions I saw Mr. Allan under at that time and the other business I had, I didn't have time to take Mr. Allam.

"Q. What was your hurry?

"A. I have considerable business to attend to in the town.

"Q. Do you mean to state that it was on account of the pressure of business on you that you did not have time to go fifty or sixty feet to the town attorney's

office—it was for the purpose of saving time, dispatching business that you refused to go?

"A. That was one reason, and another reason Mr. Allam was intoxicated and I did not consider the town attorneys would want me. to bring intoxicated men up into their office.

"Q. You went on up about fifty feet further across the street at the corner of Fuller Brothers store and Mr. Allam again requested you to go across the street to Morton and Parker's office?

"A. At the first in front of Head and Sloan's there.

"Q. I understand that was the first place. I am talking about the second time?

"A. Yes, sir.

"Q. And there is where the difficulty started in which you struck him? Why didn't you let him go when he requested you to go the second time?

"A. The warrant that I had did not request me to take Mr. Allam before Morton and Parker, the warrant issued by the mayor, and it was my duty to take Mr. Allam before the mayor of the town.

"Q. You give that as a reason why you refused to let him go and speak to the town attorney?

"A. That is one reason.

"Q. He told you that he wanted to arrange for his trial?

"A. He did not tell me anything about the trial.

"Q. Mr. Davidson, you were mad at Mr. Allam?

"A. No, sir; not in particular.

"Q. Hadn't you really been mad at him for three or four months?

"A. Mr. Allam has given me a great deal of trouble.

"Q. I am not asking you what he had done, I am asking you about your feelings?

"A. No, sir; I am not mad at no individual myself."

The instruction, for the reasons assigned, was manifestly misleading. Whether the jury decided the case upon the true issues or because they thought the officer was very unkind in not allowing his prisoner to stop along the way to see the town's attorneys; or whether they thought it was his duty to permit his prisoner to do so, or whether they concluded the defendant assaulted the plaintiff because he made the request, are matters of conjecture. Certainly it was more than probable that the lay mind was at least impressed with the thought that the officer had been derelict in not permitting plaintiff to go by and see the town attorney, when, as a matter of law, he only did his plain duty.

We think, therefore, that there was prejudicial error in giving instruction No. 2 for the plaintiff.

[7] Instruction No. 1 was objected to because it leaves out of view extenuating or mitigating circumstances arising out of the conduct of the plaintiff.

The instruction is as follows:

"1. The court instructs the jury that even if they should believe from the evidence that the plaintiff used offensive or insulting words, still that alone can in no manner justify or excuse the defendant for assaulting and wounding the plaintiff."

The instruction does not direct a verdict. Extenuating circumstances was a matter of defense, and if the defendant desired to set it up he should have asked an instruction of his own, or he should have asked for a modification of the instruction given.

[8] The law on this subject is well stated in 14 R. C. L., p. 795, sec. 56, as follows: "It is hardly possible for any court to charge in such language as to comprehend every possible point of view in which the case might be put, or to notice every exception to the general rules of law. Therefore, it is generally con-

sidered to be the duty of counsel to aid the court in the function of instructing the jury. And the very purpose of permitting requests to charge is that the jury may be fully informed as to all the law governing the case, and the trial court enabled to correct at once any mistakes that may have been made in instructing them. The rule is, therefore, firmly established that where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission, by an appropriate request, or be precluded from making such failure available as reversible error. The rule is also well settled that the party must, if he desires them, request the court to give more definite or more specific or fuller instructions. Likewise, where the court has stated a general rule of law correctly, if a party desired the jury to be informed respecting the limitation thereof, he should request the court so to charge."

In *Sargent* v. *Inhabitants of Merrimac*, 196 Mass. 171, 81 N. E. 970, 11 L. R. A. (N. S.) 996, 124 Am. St. Rep. 528, it was held that where an instruction given properly states the law so far as it goes, but a qualification might properly be added, still the failure to add it could not be urged on appeal where the addition or qualification was not asked for in the trial court. See also *Pennock* v. *Dialogue*, 2 Peters 1, 7 L. Ed. 327; *Brasington* v. *So. Bend R. Co.*, 62 S. C. 325, 40 S. E. 665, 89 Am. St. Rep. 905.

We see no objection to instructions Nos. 3, 4 and 5, given for the plaintiff. In the interest of brevity, we do not quote them here. If, in the interest of fairness to the defendant and greater clarity, they should have been modified, or added to, as shown above, the defendant should have asked for modification or additional instruction upon the same subject from his standpoint.

For the defendant, instruction No. 1 was properly given and No. 2 was properly refused.

[9] It is charged that the court erred in permitting the plaintiff to testify in chief, in assigning what he considered the reason for the alleged assault upon him, as follows:

"Q. Did you do anything to Davidson to cause him to strike you with the stick?

"A. I don't know that I ever did anything to Mr. Davidson unless one time his brother, down at the jail house, had two negroes arrested, one yellow negro and one dark one—

"Q. *Was Mr. Davidson mad at you?*

"A. *Yes; I swore against his brother; Judge Parker prosecuted the case, he asked me the question.*

"Q. *Mr. Davidson was mad at you because you were summoned against his brother as a witness?*

"A. *Yes, sir.*

"Q. You were summoned as a witness and the town attorney asked you the question?

"A. Yes.

"Q. How long was that before he made this assault?

"A. Not very long.

"Q. About how long?

"A. I could not exactly tell you the date. It has been a little while, maybe three or four months, I don't know exactly. They have the record of it down there on their books.

"Q. *He had been mad at you since that time?*

"A. *Yes, sir.*"

Part of the evidence complained of was admissible and part of it should have been excluded. It was perfectly proper for the witness to testify to any alleged fact or circumstance which had a tendency to throw any light on the reason or motive for the assault, if

one existed, other than that testified to by defendant. Therefore, it was competent for the witness to testify that he had been a witness in a case against the brother of defendant some two months prior to the arrest, but it was not competent for the witness to give his conclusions as to the effect of his having so testified upon defendant. It does not necessarily follow that the defendant was "mad at him" or "had it in for him" because he had testified against defendant's brother, and the question as to whether defendant, in his conduct towards the plaintiff, was animated by feeling growing out of this, was one for the jury to decide and not one for the witness to state his conclusions as to. In other words, the witness was stating a conclusion when he properly should only have been permitted to testify to facts and circumstances which might lead the jury to the conclusion that defendant was "mad at him."

The italicized questions and answers above quoted, therefore, should have been excluded as they are subject to the objection above stated. Testimony as to the fact that plaintiff had appeared as a witness against defendant's brother was admissible.

[10] The objection that such testimony "wrung in collateral matter that the defendant was not prepared to defend," has no merit in it. Any circumstances tending to show or throw light on the motive for an alleged assault is permissible. *Parsons* v. *Harper*, 16 Gratt. (57 Va.) 64; *Wood* v. *Am. Nat'l Bank*, 100 Va. 306 (40 S. E. 931). The case relied on, *Langhorne* v. *Com.*, 76 Va. 1012, as the basis for the motion to exclude all the foregoing testimony, is not in point.

Upon the whole case, and for the reasons assigned, we do not think the defendant has had a fair trial, and we are therefore of opinion to reverse the judgment

of the trial court, to set aside the verdict of the jury, and to remand the case for a new trial to be had in conformity with the views heretofore expressed herein.

*Reversed and remanded.*