# Richmond

L. F. HENDRICKS v. COMMONWEALTH OF VIRGINIA.

January 17, 1935.

Present, All the Justices.

The opinion states the case.

*Berryman Green,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

In November, 1933, in the Corporation Court of the city

of Norfolk, J. D. Wood and L. F. Hendricks were indicted for the murder of Ulysses G. McHough. These men elected to be tried separately and Hendricks was first tried. He was found guilty of involuntary manslaughter and his punishment was fixed at six months confinement ·in jail.

I. Berman conducted a restaurant on east Main street in that city and was the owner of an automobile, a black Chevrolet coach, license number, 137-956. On the evening of October 4, 1933, he left it in an alley near his restaurant. On it were strapped two beer barrels, or kegs, one in front and the other in the rear. He left this car, went into his restaurant and returned in about five minutes to find it gone, whereupon he called the police department of the city and reported that it had been stolen. This report was received at 7:25 p. m. and at 7:34 p. m. was relayed to all the police precincts of the city.

Hendricks, a patrolman, was attached to precinct No. 3 in Berkley ward and was at that time on duty there. Wood, another policeman was then patrolling an adjoining beat. They met about seven o'clock and went to the intersection of Middlesex and Liberty streets to investigate another matter and were there at 7:30. A coach drove up to this corner. Its driver started to get out and had put one foot upon the ground, when, it is said, because he saw the policeman, changed his mind, stepped back into his car, turned and started west on Liberty street, the direction from which he had come, and drove rapidly away. There was a beer keg on the front bumper. This driver's conduct appeared to be suspicious and the officers took down his license number. They then went east on Main street and met L. Berman, father of I. Berman, who hailed them and asked if they had received a report on a stolen car. He said that his car had been stolen and gave them the license number which corresponded with that which they had taken down. These officers got into the Berman car and drove around in that vicinity looking for the car charged to have been stolen. At the corner of Liberty and Grayson streets they called up, through box 41, police headquarters and

were told that the theft of this car had been reported. They cruised along Mahone avenue until near Craig street where a car with a beer keg strapped to its bumper was seen rapidly approaching. It went into Malachi Simpson's yard, undertook to back out, struck a telegraph pole and was stalled. This was the Berman car. Its driver got out and ran. The situation up to this point is clear enough and there is no conflict in the testimony. Thereafter the movements of the parties are anything but clear.

According to the testimony of the defendant, McHough ran across Simpson's back yard, pursued by these two officers. Hendricks called upon him several times to halt and fired in the air. McHough did not halt but continued his flight, vaulted a fence and ran across a garden. At some point during the chase Officer Wood turned back and went down Mahone avenue, intending to intercept the fugitive. After then the officers were not in sight of each other and later both of them fired at McHough, at about the same time but not simultaneously. He stumbled for a few feet and fell "right in the corner of the vacant lot," in some bushes which he had not cleared. This witness said that he did not see Caroline Tillett and of course that he did not say anything to her, and he tells us that he did not go down Mahone avenue.

In the petition for a writ of error is this account of his movements: "Upon coming upon the allegedly stolen car from the rear and as it was backing out of a lane or alley and into the unpaved roadway or street (Mahone avenue), the stolen car either struck a pole and stalled or was stalled by its driver, who immediately opened the door adjacent to the driver's seat and fled up the lane or alley from which the car appeared to have backed out. Your petitioner left the car in which he was riding and after calling upon the fleeing person to 'halt' repeatedly, fired his revolver once in the air, and pursued the fleeing person, who ran down the lane, across a yard, over a fence five feet ten inches high and thence across a garden. Your petitioner was followed for a few feet by Officer Wood who then went back

to Mahone avenue in the proximity of the two automobiles and thence down Mahone avenue. Your petitioner vaulted the fence and taking a diagonal course across the garden, across which the fleeing person was going, stopped and fired his revolver once in the direction of the fleeing person. Simultaneously with the shot fired by your petitioner, Officer Wood, who could not then be seen by your petitioner, also fired in the direction of the fleeing person, who fell and was later discovered to have been struck by two bullets, one of which inflicted a superficial wound in the arm, the other a wound which in a short while proved fatal.

"At the time your petitioner fired, he was 125 feet from the deceased. He could not see Wood who was then on Mahone avenue and he fired simultaneously or almost so with Officer Wood.

 * * * * * * * *

"Officer Wood left your petitioner as he ran down the lane, returned to Mahone avenue and went down Mahone avenue to 'cut off' the deceased. He did not again see Hendricks 'until after the man was shot.' He fired in the direction of the fleeing person. He heard Hendricks' shot and said that Hendricks fired it 'approximately at the same time mine did.' Hendricks did not run down Mahone avenue."

An examination of the body shows that it was struck twice, once a slight wound in the arm and again in the back and through the chest. The wounded man was taken to the hospital and died a short time thereafter. He was able to make no statement.

Two defenses are set up. It is contended that it is not possible to say who fired the fatal shot, and that even if it were fired by Hendricks it was fired by an officer in the discharge of his duty in an attempt to arrest a fleeing felon.

Caroline Tillett, a colored woman, was on her way to church. As she went along Mahone avenue to cross Craig, an intersecting street, a white man passed her "walking kind of swift" across Craig street and going towards Mahone avenue. A shot was fired; she heard the whine of

the bullet and screamed. Hendricks ran up and said: "Let me attend to this matter." He passed her, shot again and said: "Come on boys, we've got him." Elsewhere she said that she did not know who had fired the second shot. The man, shot, fell on the corner of Craig street and Mahone avenue and in the street. There were but two shots. The witness stood near a light on Craig street. With her was another colored woman, Fanny Holly, who testified in part as follows:

"Q. What happened at 9th (Craig street) and Mahone avenue?

"A. Before we got near enough to the house to get there a shot took place.

"Q. What did you do when the shot took place?

"A. I pulled my arm from Caroline Tillett and jumped up on the steps.

"Q. What steps?

"A. The house on the corner.

"Q. The house on the corner?

"A. Yes, sir.

"Q. Did you see anything more after that, did you watch from where you were?

"A. While I was standing on the step the policeman was running and pulled a gun out and shot, and I run back to the step, and as I was stepping there, I saw a man cross over Craig street, and when he got to the corner, moving rapid to Mahone—

"Q. Wait a minute.

"By Mr. Green: Let the witness go ahead.

"A. (Continuing) He got to the corner, and when he reached to the other side of Craig street and Mahone avenue to the corner, the police shot him, and when he shot him he fell, and he shot again."

It is perfectly true that the evidence of these negro women is very confusing and it is also true that the testimony of Caroline Tillett in some respects is in conflict with her testimony given before the police justice when this case was first heard. Such conflicts affect her credibility but

they leave the jury free to accept her latest statement if they believe that it should be accepted. *Parsons* v. *Parker,* 160 Va. 810, 170 S. E. 1. Certainly these women had no interest in the case. The occurrence terrified them and it is natural that they should be confused. It is equally certain that both Wood and Hendricks are vitally interested. The accounts of the homicide are in hopeless conflict. One, from the testimony, would scarcely know that these witnesses were talking about the same incident.

██ The jury had a right to accept these women's statements, and if accepted, to reach the conclusion that Hendricks fired the fatal shot. In the marine corps he had qualified as a pistol expert, and while there is some conflict of evidence as to the extent to which the streets were lighted where McHough fell yet they must have been lighted for Hendricks saw him stumble for a few feet and fall when shot.

This brings us to the real question in this case: What right has an officer to shoot a suspected felon fleeing from arrest?

██ "A felony is so serious a violation of law that an officer may, without a warrant, arrest one on reasonable suspicion of his having committed a felony, and he will be protected even though no felony has been committed, if he had reasonable ground for his belief. Beale's Crim. Pl. & Pr., section 20." *Crosswhite* v. *Barnes,* 139 Va. 471, 124 S. E. 242, 244, 40 A. L. R. 54; *Hill* v. *Smith,* 107 Va. 848, 59 S. E. 475.

This power, however, vested in officers is not without its limit. The utmost good judgment is not to be expected at all times from them but within reasonable limits the necessity for homicide in an attempt to arrest must appear.

██ "Public officers duly equipped with the authority of the law represent the majesty of the law, and to them, when so equipped, every good and true citizen should yield prompt and willing obedience, and they should be accorded the fullest protection in the discharge of their duties. But 'nothing can so militate against the efficient administration

of justice and the proper regard for the law of the land as unlawful and reckless conduct on the part of officers who are charged with its enforcement.' *Bourne* v. *Richardson,* 133 Va. 441, 113 S. E. 893." *Crosswhite* v. *Barnes, supra.*

"Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests, to prevent escapes, and to deliver prisoners where they are required by law or by warrant to deliver them.

"When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when they are not expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court." *Davidson* v. *Allam,* 143 Va. 367, 130 S. E. 245, 246.

▮ The law does not clothe an officer with the authority to judge arbitrarily of the necessity of killing a person to secure him, or of killing a person to prevent the rescue of a prisoner. He cannot kill unless there is a necessity for it, and the jury must determine upon the testimony the existence or absence of the necessity. They must judge of the reasonableness of the grounds upon which the officer acted. *State* v. *Bland,* 97 N. C. 438, 2 S. E. 460.

"The killing must, of course, be apparently necessary, for one is not justified in taking human life if there be any other effective way of effecting the arrest; but this is a question of fact for a jury, and not of law for the court." *State* v. *Smith,* 127 Iowa 534, 103 N. W. 944, 946, 70 L. R. A. 246, 250, 109 Am. St. Rep. 402, 4 Ann. Cas. 758.

Hendricks knew the character of the crime charged. It was neither heinous nor desperate, even if we assume that it was a felony. It is possible that it was simply an unauthorized taking of a car for private use which is but a misdemeanor (Code, section 4480), though we shall assume that this officer in fact believed that a felony had been committed. It was, however, a minor one. McHough was no public enemy No. 1, and he was not resisting arrest.

This distinction is well expressed in *State* v. *Bryant,* 65 N. C. 327, where it is said: "Extreme measures, there-

fore, which might be resorted to in capital felonies, would shock us if resorted to in inferior felonies. But, in any case where extreme measures are resorted to in making arrests, it must appear that they were necessary, and that the felon could not be otherwise taken." *Holloway* v. *Moser,* 193 N. C. 185, 136 S. E. 375, 50 A. L. R. 262; 17 Ann. Cas. 900, *note.*

The presence of that necessity spoken of in the cases is pre-eminently a question of fact and therefore a question for the jury.

In *Mylett's Adm'r* v. *Burnley, Sheriff,* 163 Ky. 277, 173 S. W. 759, 761, the court said: "This is not a case where the officer has the right to act merely on his own belief. The law does not clothe him with authority to judge arbitrarily of the necessity. He cannot kill, except in case of actual necessity, and whether or not such necessity exists is a question for the jury." *Love* v. *Bass,* 145 Tenn. 522, 238 S. W. 94; *State* v. *Bland, supra;* 17 Ann. Cas. 900, *note;* 5 C. J., p. 425; 2 Bishop's Crim. Law (8th Ed.), p. 367.

This principle, universally recognized, was applied in its entirety to the instant case, which was submitted without instruction.

 The accused was indicted for murder. Manifestly the jury thought that compelling, extenuating circumstances were proven. The verdict was for involuntary manslaughter and the punishment was light. This verdict the trial judge approved. The weight which should thus attach no longer merits discussion. It has been often and adequately stated. There is evidence tending to show that the shooting was in an open street. The victim was only 125 feet away and two officers were in pursuit one of whom, Wood, was attempting to cut him off as Hendricks followed. If this state of facts be accepted, and the jury did accept it, the verdict is adequately supported. Colloquially expressed, it thought he was too "quick on the trigger." Certainly the character of the defense, when known, bears upon the measures to be resorted to in effecting an arrest of one who is in flight.

For these reasons, the judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*

CAMPBELL, C. J., and GREGORY, J., dissenting.