## Richmond

Louis H. Parker v. Herbert B. McCoy.

April 24, 1972.

Record No. 7665.

Present, All the Justices.

*Harry P. Hart* (*T. Brooke Howard; Howard, Stevens, Lynch, Cake & Howard; Murphy and Hart,* on brief), for plaintiff in error.

*Robert M. Yacobi* (*Yacobi & Wood,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Louis H. Parker brought this action to recover for personal injuries intentionally inflicted by Police Officer Herbert B. McCoy, and Officer McCoy counterclaimed for personal injuries intentionally inflicted by Parker in the same fray. The jury awarded Officer McCoy $25,000 compensatory damages and $10,000 punitive damages. Parker now appeals from the $35,000 judgment entered on the verdict.

Parker operated a poolroom in the Hilton area of Newport News, with a lunch counter where beer was served.

In November 1967, Officer McCoy's superior officer instructed him to make a check of the Hilton area of the City of Newport News because fights had occurred in "beer establishments" in that area. So on November 4, Officer McCoy entered Parker's poolroom to make a "routine check".

Shortly after Officer McCoy entered the poolroom, Parker approached McCoy and asked if he was looking for anyone. Officer McCoy replied, "No sir, I'm just checking". Parker then said, "Well, if you're not looking for anybody, we don't want you in here".

Officer McCoy refused to leave until he had "checked the place". Parker began to scream and shout, ordering Officer McCoy to get out. The customers in the establishment stopped their games and stared at Parker and McCoy.

Officer McCoy then told Parker he was under arrest for disorderly conduct. Officer McCoy "reached over and took [Parker] by the left arm and said, 'come with me'". Parker grabbed Officer McCoy's coat with both hands. To free himself, Officer McCoy struck Parker twice under the right arm with a blackjack.

A scuffle ensued. Officer McCoy struck Parker several times with his blackjack. The fight ended when Parker felled Officer McCoy by striking him with a pool cue.

We find the evidence, which we have summarized in the light most favorable to Officer McCoy, sufficient to sustain the verdict

for McCoy. The other questions raised on this appeal relate to the court's refusal to admit evidence of the *nolle prosequi* of a charge against Parker, and to the court's refusal of certain instructions and giving of certain other instructions.

■ After the fray, Parker was arrested and charged with disorderly conduct. At the trial of this action, Parker's counsel offered, but the court refused to admit, evidence that a *nolle prosequi* had been entered on that charge.

We agree with Parker's counsel that whether Officer McCoy had probable cause to arrest Parker for disorderly conduct was an issue in this case. But the *nolle prosequi* of the charge against Parker did not constitute an acquittal of the charge, *see Lindsay* v. *Commonwealth*, 4 Va. (2 Va. Cas.) 264, 265 (1823), much less an adjudication of lack of probable cause for an arrest. Borrowing from the majority rule in malicious prosecution cases, see cases collected in Annot., 59 A.L.R.2d 1413, 1429 (1958), we hold that the abandonment of the criminal charge against Parker constituted no evidence of want of probable cause for Officer McCoy to arrest Parker. The court therefore properly excluded evidence of the *nolle prosequi.*

■ Parker's counsel asked the court to instruct the jury that it is unlawful for any person without authority of law to enter or remain on the premises of another after being forbidden to do so.[1] An accompanying instruction, also offered by Parker's counsel, would have told the jury that when Officer McCoy refused to leave the premises after Parker had asked him to leave, McCoy became a trespasser.[2] The court refused both instructions, which were marked "1" and "2".

The right of Officer McCoy to remain on Parker's premises should be distinguished from the right of an ordinary citizen to remain on premises after being asked to leave. As pointed out by a textwriter in a somewhat different context:

"All officers, inspectors as well as policemen and firemen, derive their right of entry from law and not from either the consent or the invitation of the occupier. The protection accorded to such

[1] This instruction followed the language of the Virginia criminal trespass statute, Code § 18.1-173.

[2] This instruction also advised that after Parker requested Officer McCoy to leave the premises, Officer McCoy had no right to remain on the premises unless he proved by a preponderance of the evidence that he refused to leave because he was lawfully performing the duty of a police officer.

a visitor should therefore be prescribed by law to fit the circumstances of the visit, and not governed blindly by a false analogy to invitation or consent." 2 *Harper and James, The Law of Torts* § 27.14, at 1505 (1956).

A police officer has a law-given right, rather than an owner-consensual right, in the line of his duty to enter a business establishment to observe at least what is not hidden from view in the establishment. And an officer has the same right to remain on the premises until he has discharged his duty, despite the owner's request that he leave. To call the officer a trespasser is to make a false analogy to a customer or other private citizen who remains on premises over the owner's protest. The court therefore properly refused instructions 1 and 2.

By another instruction offered by Parker's counsel, the court would have told the jury that a police officer has the status of a licensee when he enters a building for the purpose of investigation. The court properly refused that instruction, which was borrowed from the law of negligence. By the instruction, Parker's counsel apparently intended to advise the jury that Parker had the right to rescind Officer McCoy's "license" to enter the poolroom. For reasons given in the preceding paragraph, the instruction was improper in this case.

The court granted instruction R, which followed the language of the ordinance of the City of Newport News proscribing disorderly conduct:

"Any person who shall make a disorderly noise in any public place in the City to the annoyance or disturbance of any of its citizens, or who shall in any way disturb the quiet and good order of the City is guilty of a misdemeanor."

At oral argument before us Parker's counsel suggested that the ordinance is unconstitutionally overbroad. But since that contention was not made in the trial court, we will not notice it. *Manley v. Commonwealth*, 211 Va. 146, 149, 176 S.E.2d 309, 312 (1970).

The court refused to grant instruction 15, which would have told the jury "that disorderly conduct must be such behavior or acts as tends to corrupt public morals or outrage the sense of decency of others within sight or hearing of the person committing such acts". The court properly refused instruction 15 because its language did not conform to the language of the Newport News ordinance under which Officer McCoy was acting.

In a case involving a State statute, this Court approved the language used in instruction 15 as the *usual* definition of disorderly conduct. *Hackney* v. *Commonwealth*, 186 Va. 888, 890, 45 S.E.2d 241, 242 (1947). But *Hackney* does not preclude an ordinance from defining disorderly conduct differently.

■ Parker's counsel complains of instruction Q, which was given by the court:

"Even though you may believe from the evidence that Officer McCoy was at fault in bringing about the fight, and that Mr. Parker had a right to defend himself, nevertheless, Mr. Parker in protecting himself from any such attack only had a right to use such force as appeared reasonably necessary. And if you believe from a preponderance of the evidence that Mr. Parker used more force than was reasonably necessary, or that Officer McCoy withdrew from the fight and that Mr. Parker thereafter attacked Officer McCoy when there was no necessity or apparent necessity therefor, then Mr. Parker cannot rely upon the claim of self-defense."

The language of instruction Q respecting Officer McCoy's withdrawal from the fight is deficient in that it fails to require a finding that Officer McCoy withdrew in good faith from the fight and disclosed to Parker his desire to terminate the fight. *See Banks* v. *Bradley*, 192 Va. 598, 66 S.E.2d 526 (1951).[3]

Parker's counsel contends there was no evidence that Officer McCoy withdrew from the fight. We do not pass on this question now. The trial court must determine whether the evidence at a new trial supports the giving of instruction Q with the amendment referred to in the preceding paragraph.

■ Parker's counsel complains of instruction T given by the court:

"The Court instructs the jury that in effecting arrest of a misdemeanant, a peace officer has the right to use such reasonable force, including the use of a club, as the surrounding circumstances apparently require."

---

[3] *Prosser* states the rule: "Even though the plaintiff was the aggressor in the first instance, if he withdraws from the encounter, and clearly brings his withdrawal home to the mind of his opponent, there is no privilege to renew the conflict and attack him." *Prosser, Law of Torts* § 19 at 110 (4th ed. 1971).

The language of instruction T was taken from *Mullins* v. *Mc-Clung*, 123 W.Va. 682, 686, 17 S.E.2d 621, 624 (1941), but that case does not expressly approve the use of the language in an instruction to the jury. In any event, we hold that the words "including the use of a club" should have been omitted from instruction T. These words tend to impart the court's approval of the use of a club, instead of leaving the question of reasonable force to the trier of fact.

Parker's counsel also complains of instruction V given by the court:

"The Court instructs the jury that a peace officer in making arrest is presumed to act in good faith as to the extent of force employed by him, and is primarily judge of force to be used under circumstances."

We do not approve the language of instruction V. The court should have told the jury, in the language of an instruction approved by this Court in *Davidson* v. *Allam*, 143 Va. 367, 380, 130 S.E. 245, 248 (1925),[4] that:

"in making an arrest under lawful authority, . . . [a police] officer is within reasonable limits the judge of the force necessary under the circumstances, and he cannot be found guilty of any wrong, unless he arbitrarily abuses the power conferred upon him."

Parker's counsel complains of two other instructions given by the court.

One told the jury that as a matter of law Officer McCoy was acting within the scope of his employment when he entered Parker's premises. That matter was not in issue because Officer McCoy testified without contradiction that he entered Parker's premises to carry out his superior officer's order.

The other instruction told the jury that an officer who makes an arrest may evidence his intention by acts instead of words. That matter was not in issue because, as set forth in Parker's brief, he made no contention that he did not know that Officer McCoy was attempting to arrest him.

---

[4] The instruction referred to in the text, marked "1", is not reproduced in the opinion in *Davidson* v. *Allam*, *supra*, but can be found in the printed record at 104-05.

Since both of these instructions were unnecessary under the evidence adduced at the first trial, they should have been refused lest they confuse the jury.

*Reversed and remanded.*