Cynthia **WELLINGTON,** Guardian of the Estate of Robert D. Gravelle, **Appellant,**

v.

Brian L. **DANIELS,** Darrel W. Stephens and City of Newport News, Virginia, **Appellees.**

No. 82–2096.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1983.

Decided Sept. 19, 1983.

Stephen C. Swain, Virginia Beach, Va. (F.T. Stant, Jr., Clark & Stant, P.C., Virginia Beach, Va., on brief), for appellant.

Kris J. Sundberg, Asst. City Atty., Newport News, Va. (Robert V. Beale, City Atty., Newport News, Va., on brief), for appellees.

Before PHILLIPS and MURNAGHAN,

Circuit Judges, and BULLOCK,* District Judge.

MURNAGHAN, Circuit Judge:

Cynthia Wellington, guardian of the Estate of Robert D. Gravelle, appeals the rejection of claims for damages for personal injuries sustained by Gravelle when he was struck in the head with a Kel-lite type flashlight, by Brian L. Daniels, a Newport News policeman. The injury resulted in a fractured skull, complete body paralysis and severe reduction in mental capability. Included as defendants were Police Officer Daniels for his alleged unreasonable force in arresting Gravelle and Chief of Police George C. Austin and the City of Newport News for their failure to train and supervise properly the police department in the use of Kel-lite flashlights as weapons.

Following a trial in which the jury found in Officer Daniels' favor and against Chief Austin and the City, with an adverse verdict of $1,500,000.00, the district court granted Chief Austin and the City's motion for j.n.o.v. and denied a j.n.o.v. motion as to Daniels lodged by the guardian (hereinafter referred to as Gravelle). Gravelle's subsequent motion for a new trial as to all defendants was also denied. Gravelle specifically appeals the denial of the new trial and judgment notwithstanding verdict motions.

Gravelle appeals on several grounds. First, he argues that the j.n.o.v. motion as to Chief Austin and the City was improvidently granted because there was evidence that Chief Austin knew that his officers had used Kel-lite flashlights as weapons and that he had failed to promulgate a policy concerning their use. Further, he contends that a jury verdict in favor of Daniels did not preclude a verdict against Chief Austin and the City. Alternatively, Gravelle has sought a new trial as to all defendants on the ground that gross negligence was the appropriate standard of care in the case and that the same was proved.

## I. Factual Background

Shortly after midnight on April 12, 1981, Officer Daniels responded to a call from another Newport News patrol car for help in stopping a speeding vehicle, driven by Gravelle, who would not respond to police directions to stop. Gravelle was driving at dangerously high speeds and maneuvering erratically through commercial and residential areas. Eventually, a number of patrol cars were able to surround and stop the vehicle.

One witness to the incident, Judith Thompson, testified that, after Gravelle jumped from his car and attempted to run away, Officer Daniels chased him from behind and struck him in the head with his Kel-lite flashlight. In contrast, Officer Daniels testified that Gravelle was charging at him like a wild man and that he struck Gravelle in an attempt to protect himself. At the very least, it is clear that Gravelle was making an active effort to evade apprehension by the police. Apparently, by finding in Officer Daniels' favor, the jury gave more credence to the officer's version of the incident.

Dr. Kirkham, a police officer and criminologist, produced as a witness by Gravelle qualified as an expert on police procedure and equipment, testified that the Kel-lite did not bend like a nightstick and that it could be used as a powerful weapon. Kirkham further testified that there had been a Kel-lite problem in many police departments for the past 10–15 years. According to Kirkham, the problem had been chronicled in numerous law enforcement publications. As a result of mishaps in use of the Kel-lite, a number of police departments outlawed the Kel-lite, while some others issued strong cautions, in the form of orders and bulletins that the Kel-lite was not to be used as a weapon because it was capable of producing death or great bodily injury. It was Kirkham's opinion that the Newport News Police Department was "grossly defi-

* The Honorable Frank W. Bullock, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

cient in not, at the very least, putting out a course of the sort ... indicated."

Chief Austin kept abreast of police science by attending seminars and classes, reading various publications and discussing police matters with other police chiefs. He was aware generally that Kel-lites and similar flashlights had been used by police as weapons with severe consequences in the way of serious bodily injuries. He also testified that he was not aware of any specific injury producing use of Kel-lites that had occurred in Newport News although he recognized that flashlights were used by his officers to protect themselves.

Officer Daniels testified that he had received no prohibitions against carrying the light, nor restrictions on its use. Daniels testified that, like other officers, he carried and used his Kel-lite for illumination. He further acknowledged that in an emergency "you would use anything within reach to protect yourself."

## II

We must be fully cognizant from the outset that the type of serious injury inflicted by a member of the Newport News police force does not by its very nature, of itself, give it constitutional stature. Nevertheless there is a distinction between conduct by state actors and private citizens. Therefore, legitimate concerns with stemming the federalization of common law tort actions must not subvert a court's duty to safeguard legitimate constitutional rights. Clearly, Gravelle had the constitutional right to be free from *unreasonable* interference by police officers. Indeed, it is incontrovertible that the constitutional shield extends to one's physical integrity. *See Jenkins v. Averett,* 424 F.2d 1228, 1231–32 (4th Cir.1970). Bearing this in mind, we must examine whether the district court correctly assessed the evidence to find that Chief

Austin and the City were not liable for the injuries that Gravelle sustained.

In *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities may be sued for damages under § 1983 when "the action that is alleged to be unconstitutional implements a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." In its most recent pronouncement on municipal liability under § 1983 the Court made clear that a local government is liable under § 1983 only for deprivations caused by *unconstitutional* official policies or customs. *See Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). *See also Beard v. Mitchell,* 604 F.2d 485, 494 (7th Cir.1979) (§ 1983 liability requires "the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution"). The Court has had no occasion to consider the circumstances under which specific instances of unconstitutional deprivations by individual municipal employees could evidence an implicit policy that could be the basis of municipal liability.[1] However, the doctrine of *respondeat superior* as a basis of liability has been expressly rejected. *See Polk County v. Dodson,* 454 U.S. at 325, 102 S.Ct. at 453; *Landrigan v. City of Warwick,* 628 F.2d 736, 746–47 (1st Cir.1980).

█ It is true that an official policy can be inferred from a municipality's omissions as well as from its acts. *See Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir.1981); *Turpin v. Mailet,* 619 F.2d 196,

---

[1]. The *Monell* requirement that liability be grounded on official policy has been inferred from a pattern of negligence, *see, e.g., Turpin v. Mailet,* 619 F.2d 196 (2d Cir.1980), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979); *Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978); official knowledge, *Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981); as well as from a single sufficiently brutal incident, *see, e.g., Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

202 (2d Cir.1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir.1980), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980).[2] Nevertheless, such omissions are actionable only if they constitute "tacit authorization" of or "deliberate indifference" to constitutional injuries. *Avery v. County of Burke*, 660 F.2d at 114.

A number of courts have interpreted *Monell* to hold that a municipal policy of authorizing or condoning police misconduct can be inferred where the municipality has been grossly negligent in the supervision and training of its police force. *See, e.g., Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir.1981); *Owens v. Haas*, 601 F.2d 1242, 1246–47 (2d Cir.1979), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Popow v. City of Margate*, 476 F.Supp. 1237, 1245–46 (D.N.J.1979); *Leite v. City of Providence*, 463 F.Supp. 585, 590–91 (D.R.I.1978).

■ Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. *See Bowen v. Watkins*, 669 F.2d 979, 988–89 (5th Cir.1982). *See also McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability.[3] *See Berry v. McLemore*, 670 F.2d 30 (5th Cir.1982); *Avery v. County of Burke*, 660 F.2d at 114; *Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir.1980), *cert. de-*

nied, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1982). *Cf. Owens v. Haas*, 601 F.2d at 1247 (even an individual act of brutality by a county employee may be the basis for municipal liability where it arises from a municipal policy of inadequate training "so grossly negligent as to constitute 'deliberate indifference.' ").

■ Once it has, indeed, been shown that there is a policy established and maintained by the City, the City is liable for any deprivation of constitutional right caused by conduct pursuant to that policy. The causal link may be direct, as in *Monell*, where the policy commands the injury of which the plaintiff complains. Or the causal link may be supplied by tort principle that holds a person liable for the natural consequences of his actions. However, the initial inquiry is the existence of the policy. That inquiry is a complex one in a case such as this where the City's policy has not been articulated by but is alleged to be reflected in the omissions of the Chief of Police.[4]

■ "When an official has final authority in a matter involving the selection of goals, his choices represent policy." *Bowen v. Watkins*, 669 F.2d at 989. Since Chief Austin is responsible for the choice and implementation of police department practices and procedures, his acts and omissions reflect government policy. Therefore, municipal liability attaches to acts or omissions performed pursuant to that policy. In the instant case, the alleged government policy stems from Chief Austin's failure to prohibit the use of the Kel-lite flashlight by Newport News police officers or at least to have issued cautionary instructions regard-

---

**2.** *See also Duchesne v. Sugarman*, 566 F.2d 817, 832 (2d Cir.1977) ("Where conduct of the supervisory authority is directly related to the denial of a constitutional right it is not to be distinguished, as a matter of causation, upon whether it was action or inaction.").

**3.** *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970) (custom denotes "persistent and widespread ... practices"); *Knight v. Carlson*, 478 F.Supp. 55, 58 (E.D.Cal.1979) (custom denotes "settled governmental practice or '[d]eeply em-

bedded traditional ways of carrying out [government] policy' ") (quoting *Nashville, Chattanooga & St. Louis Railway v. Browning*, 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940)).

**4.** *See Smith v. Ambrogio*, 456 F.Supp. 1130, 1137 (S.D.N.Y.1978) ("The standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet.").

ing the use of the Kel-lite flashlight as a weapon.

Although Chief Austin testified that he knew that the use of Kel-lite flashlights had caused serious and sometimes fatal injuries in other jurisdictions, and that members of his force sometimes used the Kel-lite flashlight as a weapon, he was not aware of any problems associated with prior use of the Kel-lite flashlight by members of the Newport News police force. He so testified, and no other evidence on the subject was adduced. Indeed, Gravelle could point to only the single incident during which the ward of the estate was injured on which to predicate the Police Chief's supervisory and the City's municipal liability.[5] Even in the context of a j.n.o.v. in the defendants' favor, in which all the evidence must be viewed favorably to Gravelle, *see Smitty Baker Coal Co. v. United Mine Workers,* 620 F.2d 416 (4th Cir.1980), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980), the record evidence did not support the jury's verdict.[6] Therefore, the district court appropriately granted the j.n.o.v. There simply was not sufficient evidence to support a finding of City policy to allow use of a dangerous instrumentality, or any encouragement by Chief Austin of such use.

### III

■ Gravelle also contends that a new trial should be granted as to Chief Austin and the City because of the district court's failure to instruct the jury on gross negligence as requested by Gravelle.[7] The trial court made the following charge:

could not be held liable unless Officer Daniels was found to have used unreasonable force in effecting the arrest of Gravelle. However, one claim is not necessarily dependent on the other.

Though Daniels was not negligent, Chief Austin and the City might nevertheless have been liable had an improper municipal policy been adopted. However, the record simply will not sustain a finding that Chief Austin had adopted such a policy. No other City official was claimed to have done so. Hence, even if the district court's application of the principle based on the non-negligence of Daniels might have been faulty, it would correctly apply, based on the absence of fault of Chief Austin. Therefore, the end result is not affected.

5. Gravelle also contends that he should be awarded a new trial because of the district court's refusal to allow evidence of prior police misconduct. Ostensibly, such evidence would be important to the *Monell* claim. However, Gravelle puts forward only one specific incident ("the Conlon incident") for the appellate court's attention. The trial court excluded a report of alleged police brutality involving Mark Conlon, a passenger in a car involved in a high speed chase with police. In the Conlon affair, Officer J.O. Williamson struck Conlon with a *nightstick* in the course of subduing and arresting the driver and removing Conlon from the car. Officer Daniels helped put handcuffs on Conlon, but it is unclear from the report whether he ever struck Conlon. The resultant investigation cleared all participating officers of any wrongdoing. Furthermore, Chief Austin did not receive a report of the Conlon incident until May 12, 1981, a month after Gravelle was injured.

Consequently, the factors substantially support the district court's decision to exclude the evidence since the possibility of unfair prejudice clearly outweighed its probative value. With regard to that evidence, the district court did not abuse its discretion. *See Daskarolis v. Firestone Tire & Rubber Co.,* 651 F.2d 937 (4th Cir.1981); *Pierce Packing Co. v. John Morrell & Co.,* 633 F.2d 1362 (9th Cir.1980).

6. In short, no evidence supported the existence of a policy on the part of the police chief or of the municipality to encourage, or to remain indifferent to, unwarranted injury to those engaging in altercations with the Newport News Police. The district court also found that the j.n.o.v. was appropriate because of the inconsistency of the jury's verdict: the municipality

7. In addition, Gravelle argues that the district court erred by instructing the jury on his pendent state law claim against Officer Daniels as one of assault rather than negligence, as Gravelle had requested. The district court appropriately characterized Officer Daniels' action as one in assault and battery rather than in negligence. The legal character of a defendant's actions depend upon his surroundings and his state of mind. Usually the voluntary act of striking another's person is considered an intentional tort, in that the actor is substantially certain to cause an unpermitted contact. *See* Prosser, LAW OF TORTS, §§ 7–10 at 28–41.

Furthermore, Gravelle failed to produce any evidence that Gravelle acted negligently under the circumstances.

Finally, Gravelle challenges the district court's failure to instruct the jury on what constituted unreasonable force for purposes both of the pendent state claim and the "good faith" defense under § 1983. The self-defense instruction that the district court used concern-

In order to recover on that claim, the plaintiff must prove by a preponderance of the evidence as to the defendant city of Newport News and George C. Austin, one, that the city and the chief failed to issue any doctrine or regulations concerning the use of a flashlight as a weapon, and failed to instruct the police force with regard thereto.

And must also prove, too, that the city knew or should have known that members of its force were carrying flashlights which were potentially dangerous if used as a weapon, and also must prove that the city knew or should have known that such potentially dangerous flashlights were being used as weapons by members of the Newport News police force.

The appellate standard of review to be applied by the court is clear: an error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole. *See Connors v. McNulty,* 697 F.2d 18 (1st Cir.1983). Here Gravelle failed to establish a pattern of excessive use of force which would establish such a claim. Therefore, the district court did not commit reversible error by not charging the jury on a gross negligence claim. The judgment of the district court is

AFFIRMED.

ing the reasonableness of force is consonant with Virginia law. *See Parker v. McCoy,* 212 Va. 808, 812, 188 S.E.2d 222, 226 (1972). Whenever a "good faith" defense is used, the amount of force which may be used in appre-

hending someone must be explained to the jury in terms of existing state law. *See Landrum v. Moats,* 576 F.2d 1320 (8th Cir.1978), *cert. denied,* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978).