**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLARENCE R. PHILSON, JR.; CLARENCE
R. PHILSON, SR., d/b/a Philson's
Farms,
<u>Plaintiffs-Appellants,</u>

and

STEVE GRADY,
<u>Plaintiff,</u>

v.

No. 96-2542

GOLDSBORO MILLING COMPANY; COLD
CREEK FARMS, INCORPORATED;
MAXWELL FOODS, INCORPORATED;
SLEEPY CREEK TURKEYS,
INCORPORATED; MAXWELL FARMS,
INCORPORATED; CARROLL'S
PROCESSING, INCORPORATED, d/b/a
Carolina Turkeys,
<u>Defendants-Appellees.</u>

CLARENCE R. PHILSON, JR.; CLARENCE
R. PHILSON, SR., d/b/a Philson's
Farms,
Plaintiffs-Appellees,

and

STEVE GRADY,
Plaintiff,

v.

No. 96-2631

GOLDSBORO MILLING COMPANY; COLD
CREEK FARMS, INCORPORATED;
MAXWELL FOODS, INCORPORATED;
SLEEPY CREEK TURKEYS,
INCORPORATED; MAXWELL FARMS,
INCORPORATED; CARROLL'S
PROCESSING, INCORPORATED, d/b/a
Carolina Turkeys,
Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CA-95-16-4-H-1)

Argued: October 29, 1997

Decided: October 5, 1998

Before WIDENER and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part, reversed in part, and remanded with instructions by
unpublished opinion. Judge Ervin wrote the opinion, in which Judge
Widener and Senior Judge Phillips joined.

_____

2

**COUNSEL**

**ARGUED:** Robert James Willis, Raleigh, North Carolina, for Appellants. Christina L. Adams, WARD & SMITH, P.A., Wilmington, North Carolina, for Appellees. **ON BRIEF:** Donalt J. Eglinton, WARD & SMITH, P.A., Wilmington, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Plaintiffs-appellants Clarence R. Philson, Sr., and Clarence R. Philson, Jr., are turkey growers. They filed suit against various entities involved in the turkey growing and processing business, alleging these entities violated state and federal laws in their dealings with the Philsons. Following a jury trial, at which the Philsons were awarded $15,000, the Philsons filed this appeal, claiming the trial court made numerous errors throughout the proceedings below. For the reasons discussed hereinafter, we affirm in part, reverse in part, and remand with instructions.

I.

In 1989, the Philsons entered into an agreement with defendant-appellee Cold Creek Farms, Inc. ("CCF"). CCF and its successor, Maxwell Foods, Inc., were subsidiaries of Goldsboro Milling Company ("Goldsboro") and, although the relationships among the various other defendants-appellees are not quite clear from the record, it appears that they were all also subsidiaries of or otherwise related to Goldsboro. Carolina Turkeys ("Carolina"), which was a partnership between Maxwell Farms, Inc. and Carroll's Processing, Inc., was involved in the weighing and processing of turkeys at all times rele-

3

vant to this lawsuit. For ease of reference, we will refer to all these entities collectively as "the defendants."

Under the terms of their agreement with CCF, the Philsons agreed to grow poults provided by CCF according to CCF standards, with feed, medication, and services provided by CCF. In return, CCF agreed to compensate the Philsons for all "marketable turkeys" grown. Compensation was to be determined according to the weight of the turkeys on the purchaser's scale.

Under the contract, CCF decided when and at what processing plant the turkeys were to be processed. A CCF veterinarian would determine how far in advance of loading the turkeys for processing the Philsons were to withdraw feed from the turkeys. Feed is withdrawn from turkeys prior to processing in order to give the turkeys time to clear their gastrointestinal tracts, which helps prevent contamination from fecal material during processing. The length of this "off-feed time" affects the turkeys' weight -- the longer a turkey is off feed, the less it will weigh (and hence the less the grower will be paid for it).

From 1986 to 1994, and during all times relevant to this lawsuit, the processing plants selected by CCF determined turkey weight for purposes of grower payment by a weighing taken hours after the turkeys initially arrived at the plant, in violation of applicable federal regulations. Clarence R. Philson, Sr., testified that he had complained about this practice a number of times to a CCF representative because the delay in weighing denied the Philsons full credit for the turkeys' weight. Philson also complained to CCF about its allegedly utilizing a different method for calculating the number of turkeys sold when calculating the number for grower payment purposes than when calculating the number for United States Department of Agriculture reports and load reports, thereby underpaying the Philsons on their flocks.

The Philsons contended that in July and August 1991, after they had complained to CCF officials about these practices, the defendants sent them two flocks of extremely poor quality poults and then switched them from growing heavier tom turkeys to growing lighter hen turkeys. Defendants maintained that all their contract growers

4

were treated alike and that there was no difference in the quality of poults that the Philsons received. According to the defendants, given the nature of production it would have been nearly impossible to try to manipulate the distribution to assure that any one grower received better or worse quality poults. The switch to hen turkeys was made, they contended, as a result of the Philsons' poor management, because hens are more tolerant and require less attention.

CCF terminated its agreement with the Philsons in 1992, allegedly because of the Philsons' continuing neglect, lack of proper management and supervision of the turkeys, and failure to follow CCF's instructions. In 1994, the Philsons attempted to certify a class action lawsuit against the defendants in state court. In February 1995, the Philsons and their co-plaintiff Steve Grady, who is not a party to this appeal, commenced this federal action and voluntarily dismissed the state action.

In federal court, the Philsons complained of the defendants' weighing practices, and alleged that the defendants knowingly furnished the Philsons with low quality poults and terminated their turkey growing agreement in retaliation for the Philsons' vocalization of their grievances. The Philsons asserted these acts violated both state and federal law, and sought relief for tortious termination, breach of contract, unfair or deceptive trade practices, violation of the Packers and Stockyards Act, 7 U.S.C. § 181 et seq., fraud, and negligence.

In October 1995, the defendants made the Philsons a pre-trial offer of judgment pursuant to Fed. R. Civ. P. 68 for $19,828.00, which the Philsons declined. Just before trial, the district court dismissed all claims against defendants Goldsboro Milling and Sleepy Creek Turkeys, and granted summary judgment on the Philsons' fraud claim in favor of CCF. A ten-day jury trial was held on the remaining claims in August 1996. In their opening statement, the defendants admitted that their weighing practices violated federal regulations and that, as a result, they owed the Philsons some compensation. At the end of the trial, the jury returned a verdict on a special verdict sheet in favor of the defendants on all counts except two of the misweighing claims alleged by the Philsons, in which it found defendant Carolina liable to the Philsons under N.C. Gen. Stat. § 75-1.1(a) for its admitted violation of federal regulations and awarded $5,000 in damages.

5

Both sides submitted post-trial motions to the trial court. The Philsons filed motions requesting judgment as a matter of law or a new trial on certain claims pursuant to Fed. R. Civ. P. 50 and 59, for an award of costs under both Fed. R. Civ. P. 54(d) and state law, and for a trebling of the damages award pursuant to N.C. Gen. Stat. § 75-16. The defendants moved for an award of costs under Fed. R. Civ. P. 54(d) and 68. The trial court granted the Philsons' motion to treble the damage award, bringing the total judgment to $15,000, but denied all other motions.

The Philsons now appeal, alleging that the district court committed numerous errors before, during, and after the trial. The defendants cross-appeal, arguing the district court erred as a matter of law in failing to award Carolina Turkeys costs under Fed. R. Civ. P. 68.

II.

The Philsons' first assignments of error concern the trial court's decisions to limit discovery relating to other contract growers and to exclude from evidence reports prepared by the Packers and Stockyards Administration ("PSA"). We review the trial court's discovery and evidentiary rulings for an abuse of discretion. See WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172, 1174 (4th Cir. 1995). A decision to exclude relevant testimony under Fed. R. Evid. 403 is granted substantial deference; we will not overturn it unless there has been a clear abuse of discretion. See United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994).

A.

The Philsons assert that the trial court improperly limited discovery by denying their requests for information regarding other turkey farms that were under contract with CCF. Specifically, they maintain that the trial court erroneously rejected their motions seeking to compel the defendants to produce on-site inspection reports and numerous other business records for "similarly situated" growers with whom the defendants did business, and to produce documents giving the names and addresses of other growers. Although the Philsons did not receive all the items of evidence that they wanted, the amount of information that they received during discovery was substantial. The record

6

reveals that the defendants made available to the Philsons numerous documents containing a wealth of information about other growers, which included the names of many nearby turkey growers. In light of the broad discretion the trial court has in controlling discovery under Fed. R. Civ. P. 26(b)(2), we cannot find that the trial court's decision to limit the scope of discovery was an abuse of discretion.

B.

The Philsons also complain that the trial court wrongly granted the defendants' motion to exclude investigative reports prepared by the PSA. They maintain that these reports, prepared pursuant to the investigatory powers granted to the PSA under 7 U.S.C.§ 222 (1994) to enable it to enforce the Packers and Stockyards Act ("the Act"), were highly relevant and probative because they demonstrated that the PSA had "determined the relevant [issues of wrongful termination, unnecessary off-feed time, and unfair head count] in favor of the [Philsons] based upon the USDA's expertise and review of all relevant factual information. . .," Appellants' Br. at 27, and should have been admitted as admissible hearsay under Fed. R. Evid. 803(8).

Even assuming, without deciding, that Fed. R. Evid. 803(8) would permit these reports to come in as admissible hearsay, we cannot say that the trial court decision to exclude them under Fed. R. Evid. 403 was an abuse of discretion. Rule 403 allows a trial court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." The record before us shows that the defendants' motion did not ask for the PSA reports to be excluded in their entirety, rather it sought only to redact selected portions of the PSA reports -- those portions that reflected purported"conclusions" of PSA employees. It was well within the trial court's discretion to conclude that these legal conclusions could lead to juror confusion and unfair prejudice, and the court therefore did not abuse its discretion when it ordered that these reports be excluded unless the plaintiffs agreed to their redaction, which apparently they did not. Cf. Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 112 (4th Cir. 1993) (finding district court erred in excluding government report under Rule 803(8) but noting district court on remand could decide to exclude it on other grounds, including Rule 403).

7

III.

The Philsons next assign several errors to the trial judge with regard to jury instructions. We review to determine whether the district court's instructions, construed as a whole, properly informed the jury of the controlling legal principles without misleading or confusing the jury to the Philsons' prejudice. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 775 (4th Cir. 1997). "A judgment will be reversed for error in jury instructions `only if the error is determined to have been prejudicial, based on a review of the record as a whole.'" Sturges v. Matthews, 53 F.3d 659, 661 (4th Cir. 1995) (quoting Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983)).

A.

According to the Philsons, the trial court inaccurately stated the law when it instructed the jury that the Philsons were required to prove that the defendants' conduct was likely to affect competition adversely in order to prevail on their claims under the Packers and Stockyard Act, 7 U.S.C. § 192(a). This argument is without merit. Section 192(a) prohibits live poultry dealers from engaging in or using "any unfair, unjustly discriminatory or deceptive practice or device." While the Philsons correctly observe that it is unnecessary to prove actual injury to establish an unfair or deceptive practice, a plaintiff must nonetheless establish that the challenged act is likely to produce the type of injury that the Act was designed to prevent. See, e.g., Farrow v. United States Dep't of Agriculture, 760 F.2d 211, 215 (8th Cir. 1985) ("The Packers and Stockyards Act does not require that the Secretary prove actual injury before a practice may be found unfair. `[T]he purpose of the Act is to halt unfair trade practices in their incipiency, before harm has been suffered.' Accordingly, the Secretary need only establish the likelihood that an arrangement will result in competitive injury to establish a violation." (citations omitted)); see also Parchman v. United States Dep't of Agriculture, 852 F.2d 858, 864 (6th Cir. 1988) (quoting Farrow ). The district court's instruction that the Philsons needed to prove the defendants' conduct was likely to cause injury was therefore a correct statement of the law.

8

B.

Although not clearly spelled out in their briefs, the Philsons also seem to claim that the trial court erred by refusing to instruct the jury, as requested by the Philsons, that the termination of a turkey growing contract without economic justification is an unfair or discriminatory practice in violation of the Packers and Stockyards Act, 7 U.S.C. § 192(a). While the Act broadly proscribes any "unfair, unjustly discriminatory, or deceptive practice," § 192(a), there is no legal authority supporting the Philsons' argument that termination of a grower contract without "economic justification" is an unfair practice as a matter of law, and the district court's refusal to give such an instruction therefore was not error.

The Philsons' reliance on Baldree v. Cargill, Inc., 758 F. Supp. 704 (M.D. Fla. 1990), aff'd without published opinion, 925 F.2d 1469 (11th Cir. 1991), to support their argument is misplaced. In Baldree, the district court granted a preliminary injunction to prevent a poultry processor from terminating its contract with poultry growers because it found the growers had a substantial likelihood of prevailing on their claims, one of which was that the processor's termination of the plaintiff's growing contract "was without economic justification and, therefore, constitute[d] . . . an unfair, unjustly discriminatory and deceptive practice and device" in violation of § 192(a). Id. at 706. This case does little to further the Philsons' argument, however. Because it was in the context of a preliminary injunction motion, the Baldree court's decision says, at most, that the plaintiff was likely to succeed on its claim that contract termination without economic justification was an "unfair" practice -- not that such a termination was per se unfair or in violation of § 192(a). The Baldree plaintiff would still have been required to go to trial to prove its claim that the processor's termination of the growing contract without economic justification was indeed an unfair practice that violated the Act. This same opportunity to convince the jury that such a termination was unfair as a matter of fact was given to the Philsons here. The district court therefore correctly refused to instruct the jury that termination of the contract between the Philsons and CCF without economic justification was an "unfair practice" as a matter of law.

9

C.

The Philsons also argue that the trial court's instructions to the jury on the issue of poult quality did not include all of the theories presented by the Philsons. Specifically, the Philsons argue that the trial court failed to instruct the jury on its theory that the defendants intentionally manipulated the poult quality to ensure that the Philsons received inferior quality poults. We find this argument to be meritless.

The trial court properly instructed the jury with respect to all theories presented by the Philsons regarding poult quality. On this issue, the following special interrogatory was given:

> Did Cold Creek Farms alone or in conjunction with any other entity knowingly divert a disproportionate and unfair percentage of the higher quality turkey poults to parties other than the plaintiffs?

J.A. at 1146. This instruction would not have misled the jury, as a reasonable juror would have understood it to incorporate both the Philsons' contention that better quality poults were diverted to other customers -- either other contract buyers or commercial buyers, and their contention that CCF furnished them with low quality poults. The Philsons were not prejudiced by the instruction given and, accordingly, we find no error.

IV.

The Philsons' next argument is that the trial court erred in denying their application for costs. They contend that the district court incorrectly reviewed their application under Fed. R. Civ. P. 54(d) rather than under state law and that, under the applicable state law, they are entitled to at least some costs. This contention is incorrect. Indeed, the case relied upon by the Philsons, Abrahms v. Lightolier, Inc., 50 F.3d 1204 (3d Cir. 1995), supports the trial court's conclusion that federal law, not state law, governs whether to award costs to the prevailing party. See id. at 1223; see also 10 Charles Alan Wright et al., Federal Practice & Procedure § 2669, at 251 (3d ed. 1998) ("The award of costs is governed by federal law.").

10

Furthermore, even if the Philsons' contention that state law applied were correct, under the applicable North Carolina law "costs may be allowed or not, in the discretion of the court." N.C. Gen. Stat. § 6-20 (1997). Therefore, regardless of whether state or federal law would apply in this case, we review the trial court's refusal to award costs to the Philsons under an abuse of discretion standard. Id. (state law); Teague v. Bakker, 35 F.3d 978, 996 (4th Cir. 1994) (federal law). We cannot say that the trial court's denial of the Philsons' costs was an abuse of discretion. Out of their numerous claims against multiple defendants, the Philsons in the end prevailed on only one issue against a single defendant. The district court did not therefore abuse its discretion in determining not to award costs to the Philsons on the ground that they had not "clearly prevailed" in the litigation. Order of Sept. 25, 1996, in J.A. at 1268.

V.

In its cross-appeal, the defendants claim that the trial court erred as a matter of law by denying Carolina Turkeys' application for costs pursuant to Fed. R. Civ. P. 68. Rule 68 provides, in pertinent part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . .. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Pursuant to this rule, the defendants made an offer of judgment to the Philsons on October 3, 1995. The offer specified the sum that the defendants were willing to pay on each of five claims made by the Philsons, including $6,610 on their weighing claim. The total offer, for all five claims together, was for $19,828 plus costs then accrued. The defendants argue that this offer of judgment was more favorable than the $15,000 judgment, including treble damages, finally obtained by the Philsons against Carolina and accordingly, Rule 68 requires the Philsons to pay the costs Carolina incurred subsequent to the date of the offer.

11

The Philsons disagree with this calculation and set forth two arguments why the district court's refusal to award Carolina's costs should be affirmed. First, the Philsons argue that because they prevailed only on their weighing claim, for Rule 68 purposes the court should compare the $15,000 judgment they were awarded not with the $19,828 aggregate offer made by the defendants, but rather with the $6,610 offered on the weighing claim. Pointing to case law stating that Rule 68 is inapplicable when the defendant-offeror prevails at trial, Delta Air Lines, Inc. v. August, 450 U.S. 346, 351 (1981), the Philsons point out that they lost on all their other claims and contend that Carolina is not entitled to costs on those claims upon which Carolina prevailed at trial.

Although there may be some logic to this claim-by-claim approach urged by the Philsons, we find it unpersuasive given the facts of this case. The primary purpose behind Rule 68 is to encourage parties to settle and to avoid protracted litigation. Id. at 352 & n.8. As the Supreme Court observed in Marek v. Chesny, 473 U.S. 1 (1985), Rule 68 was designed to "prompt[ ] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." Id. at 5.

The Philsons' second argument against the application of Rule 68 is that the amount of the judgment obtained exceeded the amount of the offer because the "value of the non-monetary declaratory relief" obtained by the Philsons, when added to the amount of the judgment, actually exceeded the offer amount. Appellants' Answering & Reply Br. at 30. This argument is meritless because no non-monetary declaratory relief was included in the final judgment. While the Philsons correctly observe that the trial court trebled the original $5000 jury award pursuant to N.C. Gen. Stat. § 75-16 because it found the defendants had engaged in unfair or deceptive business practices, the resulting final judgment of $15,000 is still not more favorable than the $19,828 offer. As no other non-pecuniary relief was granted to the Philsons, this court again avoids the "thorny issue[ ]" of "whether or not a court should try to compare pecuniary with non-pecuniary relief." Spencer v. General Elec. Co., 894 F.2d 651, 664 n.21 (4th Cir. 1990).

Accordingly, we find that the $15,000 judgment finally obtained by the Philsons is not more favorable than the $19,828 offer made by the

12

defendants and the district court is required, under the mandatory language of Rule 68, to award Carolina costs it incurred after the offer of judgment.

VI.

In addition to the claims discussed above, the Philsons make a number of other assignments of error. For example, they claim the district court abused its discretion in allowing an expert witness for the defendants to testify regarding the quality of the poults provided to the Philsons, and in refusing to grant them a new trial on certain claims. We have closely examined each these claims, as well as the other arguments advanced by the Philsons, and find them to be unpersuasive.

Accordingly, we reverse the district court on the issue of Rule 68 costs, and remand the case to the district court with instructions to order the Philsons to pay the costs incurred by Carolina subsequent to its offer of judgment, pursuant to Fed. R. Civ. P. 68. On all other issues, the judgment of the trial court is affirmed.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>

13