**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ASSOCIATED MECHANICAL
CONTRACTORS, INC.,
Plaintiff-Appellant,

v.

HDR ENGINEERING INCORPORATED
OF THE CAROLINAS, a North Carolina
Corporation,
Defendant-Appellee,                                             No. 97-2737

and

WESTINGHOUSE ENVIRONMENTAL AND
GEOTECHNICAL SERVICES,
INCORPORATED, formerly known as
S&ME, Incorporated, a North
Carolina Corporation,
Defendant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-95-232-P)

Argued: December 1, 1998

Decided: April 29, 1999

Before WILKINSON, Chief Circuit Judge, TRAXLER,
Circuit Judge, and HILTON, Chief United States District Judge for
the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Charlie Chong Ho Lee, WATT, TIEDER, HOFFAR & FITZGERALD, McLean, Virginia, for Appellant. George Verner Hanna, III, MOORE & VAN ALLEN, P.L.L.C., Charlotte, North Carolina, for Appellee. **ON BRIEF:** M. James Grode, MOORE & VAN ALLEN, P.L.L.C., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case is before the Court on appeal of the District Court's grant of summary judgment in favor of the defendant on the claims of indemnification, breach of contract, and on the plaintiff's contention that the District Court gave improper instructions to the jury. Additionally, the plaintiff contends that the District Court erred in answering a jury's question during the deliberations.

Appellant Associated Mechanical Contractors, Inc., ("AMC") was the general contractor for phase II of the Tuckertown Water Treatment Plant project in Stanly County, North Carolina, near the City of Albemarle, North Carolina. The City of Albemarle (the "City") was the owner of the property on which it contracted for the project relating to the City's water supply system. Appellee HDR Engineering, Inc. of North Carolina, ("HDR") was hired by the City as the design engineer and contract administrator for the project. S&ME, Inc. was the geotechnical engineer hired by the City to conduct subsurface explorations relating to the Plant site.

HDR, as design engineer, had S&ME perform three separate geotechnical explorations; two preliminary reports dated November 9, 1987 and April 29, 1988, and a final report dated June 29, 1988. The

preliminary 1987 report pertained solely to the subsurface of the raw water reservoir identifying the presence of impenetrable, unrippable rock. The 1987 report specifically mentioned that the contractor should anticipate blasting at the raw water reservoir site. This report was not dispersed by HDR to prospective bidders for the raw water reservoir project. HDR gave all bidders a copy of the final June 1988 report dealing specifically with the Tuckertown Water Treatment Plant. In the final 1988 report, prospective bidders were notified that two preliminary subsurface exploration reports pertaining to this project were available upon request.

The excavation portion of the Contract for the Tuckertown Water Treatment Plant project was bid unclassified. AMC submitted a bid and was successful in winning the Contract. AMC's bid did not take into account the presence of the subsurface unrippable rock, and due to the necessity for blasting of subsurface rock, ran into project cost-overruns. AMC submitted this "Rock Claim" to the City, and the claim was denied. AMC subsequently sued the City and the case was settled prior to trial. Through the settlement negotiations between AMC and the City, AMC received a total of $1.1 million, $931,000 of which went for the Rock Claim and assignment of all the City's possible claims against HDR. AMC, as assignee of the City's claims, subsequently brought suit against HDR for the $931,000 payment, as well $294,014.06 due to HDR's alleged defective design of the Tuckertown Water Treatment Plant.

The District Court considered this case on summary judgment. The complaint alleged indemnification (Count I), breach of contract (Count II), negligence (Count III), and professional malpractice (Count IV). The District Court granted summary judgment as to all claims except the Count II claims for defective design and poor contract administration.

The District Court found the Contract did not impose a duty upon the City to provide AMC with any other reports other than the final 1988 report, and limited the contractor's reliance to only the "technical" data in the final 1988 report itself. The Court found that "technical" data included the boring laboratory data, but did not include opinions or interpretations by S&ME personnel that related to the requirement of blasting rock that may be located at the raw water res-

3

ervoir site. Further, if the contractor had determined that it required additional information, the burden was on the contractor to seek the information by conducting its own tests. The District Court based its opinion on the language of the Contract between AMC and the City. Within the Contract Documents, that portion discussing S&ME's report stated:

> Bidder may rely on the accuracy of the "technical" data contained in [the final report] but not upon non-technical data, interpretations or opinions contained therein, or for the completeness thereof for the purposes of bidding or construction.

> [T]he technical data contained therein upon which Bidder is entitled to rely are incorporated therein by reference. Such technical data is boring method, location and logs, and laboratory test methods and results.

> Before submitting a bid, each Bidder will, at Bidder's own expense, make or obtain any additional examinations, investigations, explorations, tests and studies and obtain any additional information and data which pertain to the physical conditions, surface or subsurface, at or contiguous to the site . . . which Bidder deems necessary to determine its Bid for performing and furnishing the work in accordance with the time, price and to the terms and conditions of the Contract Documents.

The District Court found for the defendant on AMC's claims of breach of contract because the excavation portion of the AMC Contract was bid "unclassified." Therefore, AMC bore the risk of the subsurface conditions, and the City (and therefore HDR) had provided all borings and technical data included in S&ME's reports. The City had no duty to provide any more information to AMC other than that information contained in the final June 1998 report.

The District Court found HDR was entitled to summary judgment on Counts II, III, and IV as they pertain to the City's attorney's fees and litigation disbursements. In the absence of express contractual language providing for indemnification of attorney's fees, they were

4

not subject to an indemnification provision. See United States v. Fidelity & Guar. Co. v. Davis Mechanical Contractors, Inc., 189 S.E.2d 553, 554 (N.C. Ct. App. 1972). The Court found HDR entitled to summary judgment on AMC's claims for indemnification relating to problems with the Plant structures, and for indemnification on all of the expenses other than the amount allocated to the Rock Claim because they were not claims as contemplated in the Indemnification Provision of the Contract. The Court found HDR entitled to summary judgment on AMC's claims for negligence (Count III) and professional malpractice (Count IV). In North Carolina, a plaintiff may not bring an action for negligence or professional malpractice when there is a contractual relationship between the parties, except in very limited circumstances not applicable to the parties in the present case. See North Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345 (N.C. 1978).

The only claim which survived the District Court's ruling was Count II as it related to defective design and poor contract administration. This issue was tried to a jury and, at the conclusion of the evidence, the District Court submitted a verdict form containing four questions for the jury: 1) Did the City properly assign its claims to AMC? 2) Did the Contract for design services between the City and HDR require HDR to design a totally crack-free, leak-free project? 3) Did HDR breach its Contract for design services with the City? 4) How much is AMC entitled to recover for HDR's breach?

The District Court instructed the jury that if it answered "no" to any question on the verdict form, it was to stop and not consider the succeeding questions.

During the course of deliberations, the jury submitted a question to the Court asking whether the terms "totally crack free, leak free" from Question No. 2 meant (1) "cracks that leak" or (2) "totally crack free and totally leak free." The Court answered that "totally crack free, leak free" meant "totally crack free and totally leak free." Thereafter the jury returned the verdict form answering "no" to Question No. 2, and stopped it's deliberation finding in favor of the defendant.

The standard of review in determining whether the District Court erred in granting summary judgment in favor of HDR and against

5

AMC on the Rock Claim is de novo. See Wiley v. Mayor and City Council of Baltimore, 48 F.3d 773 (4th Cir. 1995); Freeman v. Case Corporation, 118 F.3d 1011 (4th Cir. 1997), cert. denied, 118 S.Ct. 739 (1998). This Court must consider all the pleadings and allegations in a light most favorable to the non-moving party and decide whether there is a genuine issue of material fact to be submitted to the trier of fact. Fed. R. Civ. P. 56(c). If the Court finds the evidence insufficient to support a reasonable jury verdict in favor of the non-moving party, the district court's granting of summary judgment must be affirmed. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 251-52 (1986).

The nexus of this lawsuit by AMC is based on the fact that AMC did not receive the information pertaining to the unrippable rock in the final 1988 report submitted to all prospective bidders for phase II of the raw water reservoir project. The facts establish that the excavation portion of the AMC Contract was bid unclassified. The Contract being bid unclassified resulted in the contractor, AMC, bearing the risk of subsurface conditions. See Ruby-Collins, Inc. v. City of Charlotte, 70 F. Supp. 1159 (W.D.N.C. 1990), aff'd, 930 F.2d 23 (4th Cir. 1991); see also APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth., 431 S.E.2d 508, 512-13 (N.C. Ct. App.), rev. denied, 438 S.E.2d 197 (N.C. 1993) (where all excavation was"unclassified," the contractor was not entitled to compensation at a higher rate for undercut work it allegedly did not expect to have to perform); see generally Thompson-Arthur Paving Co., a Div. of APAC-Carolina, Inc. v. North Carolina Dep't. of Transp., 387 S.E.2d 72 (N.C. Ct. App.), rev. denied, 394 S.E.2d 186 (N.C. 1990) (bid estimates in a contract for unclassified excavation do not amount to a warranty of the amount of excavation to be encountered, so contractor bore the risk of their inaccuracy).

The appellant in this case does not dispute that AMC's Contract with the City states that all excavation will be defined as unclassified. Nor does the appellant contend that upon request, S&ME failed to provide AMC with a complete copy of the final June 1988 report. Appellant contends that they should have been provided with the additional preliminary reports, or allowed to rely upon the information that was provided to them in the final 1988 report to determine

6

their total costs for its bid. However, within the Contract Documents, the Information for Bidders; Subsurface Investigation provided:

> Copies of the report entitled "Report of[Sub]Surface Explorations, Proposed Water Treatment Plant, Albemarle, North Carolina, S&ME Job No. 1351-88-158" are on file at the offices of the City of Albemarle, Director Water/Sewer Utilities; HDR Engineering, Inc. of North Carolina; and at Soil & Materials Engineers, Inc.
>
> Copies of this report with any related information may be secured from the above upon written application and payment to [S&ME].

Additionally, the Contract Documents state that:

> Before submitting a bid, each Bidder will, at Bidder's own expense, make or obtain any additional examinations, investigations, explorations, tests and studies and obtain any additional information and data which pertain to the physical conditions, surface or subsurface, at or contiguous to the site . . . which Bidder deems necessary to determine its Bid for performing and furnishing the work in accordance with the time, price and to the terms and conditions of the Contract Documents.

The Contract Documents clearly placed AMC on notice that additional S&ME subsurface reports were available at their request. While AMC alleges that HDR was required to provide this additional information, the Contract Documents state that the preliminary reports or drawings, although made available to potential bidders, were not part of the Contract Document and not required to be provided with the contract information. The obligation was on AMC to request the preliminary reports, if it deemed necessary, to formulate the costs for its bid.

The Contract Documents specifically provided that the bidder, although allowed to rely upon the accuracy of the"technical" data of the final 1988 report, may not rely upon the non-technical data, inter-

7

pretations or opinion contained therein, or for the completeness thereof for the purposes of bidding or construction. The Contract Documents specifically placed the burden on the Bidder to make its own "investigations, explorations, tests and studies" to determine its bid. AMC failed to follow these terms of the Contract.

The Contract Documents put an express burden on bidders to request any clarifications they deemed necessary. In Paragraph 3(a) of the General Conditions and referenced by the Information for Bidders, the submission of the Proposal for the Contract proves acknowledgment that the Contractor has carefully examined all the documents pertaining to the project. If for some reason the Contract Documents needed clarification, there was a specific procedure for receiving clarification under the General Conditions of the Contract. Specifically, the Contract states: "If a bidder intends to submit a bid for Work and is in doubt as to the true meaning of any part of the proposed Contract Documents, he may submit ... a written request for an interpretation thereof." (City of Albemarle Contract No.2; General Condition, p. 4). This provision appears to clearly place the burden on the bidder to request any additional clarification. However, AMC provided no evidence that it requested any clarifications as to the"technical data" it was allowed to rely upon as stated in the final 1988 report. AMC was not owed the preliminary reports by S&ME pertaining to the subsurface of the site nor were they entitled to rely solely on the final report as evidenced in the Information for Bidders. It was the duty of AMC to find out any additional information necessary for its bid and AMC failed to request this information, thus, based its bid on its own lack of investigation.

AMC asserts an indemnification claim against HDR, alleging HDR breached its duty to the City and that the breach was the sole cause of the City's damages.

The 1989 Agreement between HDR and the City of Albemarle provides that "[t]he engineer hereby agrees to indemnify the owner for all claims arising solely from negligent acts, errors or omissions of the engineer in the performance of professional services under this Agreement." (Agreement Between City of Albemarle, N.C. and HDR Engineering, Inc. of N.C. for Professional Services, p. 13, March 20, 1989) (emphasis added). Thus, if any other party failed to act reason-

8

ably prudent under the circumstances, and that negligence contributed to the City's loss, the indemnification provision does not apply. N.C. GEN. STAT. § 22B-1 (1997). For AMC to recover from its indemnification claim, AMC must prove that HDR breached a duty to the City and that the breach was the sole cause of the City's damages.

The record shows that S&ME was the party that prepared all soil reports relating to the raw water reservoir project. They conducted the borings and site investigations upon which the reports were based. HDR did not have involvement in the investigations or the preparations of the reports, and under the language of the Contract Documents, did not guarantee their accuracy. S&ME represented in their June 1988 report and cover letter that the report superseded the earlier reports and contained all applicable laboratory and soil boring information. Therefore, irrespective of whether HDR acted alone in deciding what reports to make available, that decision could be negligent only if the final June 1988 report did not contain all pertinent technical data, or the technical data was inaccurate. Because S&ME prepared the report and represented that it was complete, S&ME was also responsible for any such alleged incompleteness or inaccuracy.

The record shows that AMC contributed to the alleged negligence by failing to perform a reasonable site investigation. Under the terms of the Contract Documents, AMC was required to obtain any additional information relating to subsurface conditions necessary to compute its bid. AMC failed to investigate, thus the cause for their cost overrun of the bid amounts. Therefore, HDR could not have been the sole cause of the City's purported damages, allowing for an indemnification cause of action. AMC was not owed the preliminary reports by S&ME pertaining to the subsurface of the site nor were they entitled to rely solely on the final report as evidenced in the Information for Bidders. It was the duty of AMC to find out any additional information necessary for its bid, and AMC failed to request this information, thus, based its bid on its own lack of investigation. See Ruby-Collins, 740 F. Supp. at 1163. The District Court therefore did not err in granting summary judgment in HDR's favor.

AMC contends that the District Court erred in submitting Question No. 2 on the jury verdict form to the jury and instructing the jury not to continue to Question No. 3 if it answered "no" to Question No. 2.

9

AMC asserts that the issue in number three could be a separate breach by HDR with the City, and that the jury could have found in its favor. By not allowing the jury to proceed with its deliberation if it found against Question No. 2, AMC alleges it was deprived of its right to have the jury decide whether or not HDR breached the portion of its Contract with the City that required it to administer the construction process.

The standard of review for jury instructions in determining whether the District Court erred is whether there was an abuse of discretion. In reviewing the adequacy of the District Court's choice of jury instructions, "we accord the District Court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law." Teague v. Bakker, 35 F.3d 978, 985 (4th Cir. 1994), cert. denied, 513 U.S. 1153 (1995); see also Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1164 (4th Cir. 1986).

The District Court, by giving the jury instruction not to proceed any further if it answered "no" to any one of the questions, was not in error. The jury found that the Contract for design services between the City and HDR did not require HDR to design a totally crack-free, leak free project. As such, HDR would not have breached its contract for design services with the City. AMC's complaint addressing Question No. 3 was about HDR directly, not the City. Thus, there was not a separate and independent basis for breach of contract. AMC's assertion that HDR required AMC to perform repairs beyond its contractual requirements fails to link any allegation that there was a breach of HDR's duty to the City.

Additionally, AMC asserts that the District Court erred in instructing the jury on the meaning of the phrase "totally crack-free, leak-free" to mean "totally creak free and totally leak-free" when questioned as to the meaning of Question No. 2 on the jury verdict form. The standard of review in determining whether the District Court committed reversible error when it answered a question from the jury during the deliberations is whether the answer fairly responded to the jury's question without creating prejudice. See United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1406-07 (4th Cir. 1993); Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983). The

10

Court will not reverse a judgment because of an erroneous jury instruction if "viewed as a whole and in the context of the trial, the charge was not misleading and contained an adequate statement of the law to guide the jury's determination." Id. at 1407 (quoting United States v. Park, 421 U.S. 658, 675 (1975)).

During the jury deliberations, the District Court responded to the jury's inquiry as to the definition of "totally crack free, leak free" in Question No. 2 on the jury verdict form. The jury questioned whether the term "totally crack free, leak free" meant"cracks that leak" or "totally crack free and totally leak free." The appellant contends that the District Court erred when it answered the jury's inquiry stating that the term meant "totally crack free and totally leak free." The appellant argues that the definition of "totally creak free, leak free" was a question for the jury to determine, and not for the Judge to have instructed the jury upon.

AMC has not demonstrated that the District Court's interpretation of the term "totally crack free, leak free" created any prejudice to AMC. AMC submitted its own proposed jury instructions addressing the possible design defect by HDR in Question No. 3, stating that "the design would result in a project that was free of leaks and cracks." AMC's proposed jury instruction for Question No. 4 again referred to the project as "free of leaks and cracks." AMC clearly distinguishes the definition of "totally crack free, leak free" as "totally crack free and leak free" and not "cracks that leak." The District Court's response to the jury's question that "totally crack free, leak free" meant "totally crack free and totally leak free" in essence, follows the same line of reasoning that AMC asserted in its own argument. Therefore, this Court can find no error in the District Court's instruction.

Even if the Court were to have found the District Court erred in giving its instruction, "an error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole." United Medical & Surgical Supply Corp., 989 F.2d at 1406-07 (quoting Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983)). Based on the review of the record, the Court finds that there was no prejudicial error that would mandate reversal of the judgment.

AFFIRMED

11