COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


ARDIE CORNEILUS FLOWERS, JR.

                                                  MEMORANDUM OPINION* BY
v.        Record No. 1822-10-2                    JUDGE JEAN HARRISON CLEMENTS
                                                  OCTOBER 11, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

William T. Linka (Richmond Criminal Law, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Ardie Corneilus Flowers, Jr. (hereinafter "appellant") was convicted of voluntary

manslaughter and unlawful wounding.  On appeal, he maintains the evidence was insufficient to

support his convictions and that the trial court applied incorrect legal standards in rejecting his

self-defense plea.  Finding no error in the trial court's decision, we affirm.

As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). On August 9, 2009, Derrick Bynum was in downtown Richmond when his brother Leeshaun ("Shaun") Bynum appeared without warning in his car. Shaun told Derrick he had been looking for him because appellant had "slapped" their mother.

Derrick joined Shaun in his car, and the two brothers immediately went to appellant's house. When they arrived, they encountered appellant's thirteen-year-old son, Trey, exiting the front door. Derrick and Shaun told Trey they needed to speak with appellant, and Trey went back inside while the brothers remained on the front porch. Upon learning the Bynums were waiting, appellant, who was showering, partially dressed and went to the door.

The Bynums greeted appellant in an "aggressive" tone, instructing him to step outside to discuss the "incident that happened earlier between [him] and [their] mama." Appellant asked the brothers to wait while he went upstairs and fully dressed. Following his father upstairs, Trey told him he was "scared" and that appellant should get his gun. Appellant put a loaded gun in his pocket before returning downstairs and inviting the Bynums inside.

The Bynums followed appellant into the kitchen and began to talk to him about the incident with their mother. Appellant sat down at the kitchen table and invited the brothers to do the same, but they refused. Instead, they stood together in the narrow space between the kitchen table and the sink. Appellant denied hitting their mother and suggested that they call her "to straighten this thing out." Toward that end, Trey retrieved appellant's cell phone from upstairs and gave it to Shaun.

Shaun went into the living room and spoke on the phone for several minutes. During that time, Derrick remained in front of the kitchen sink with his arms folded in front of him.[1]

---

[1] Appellant disputed Derrick's testimony that his arms remained in front of him and contended that Derrick frequently put one hand behind his back, causing appellant to fear he was

Appellant continued to deny striking Derrick's mother and told Derrick his mother had stolen money from appellant's closet. Derrick went into the living room and related to Shaun what appellant had stated. Shaun, who continued to talk on the phone, appeared to have no reaction to this announcement.

Shortly thereafter, Derrick and Shaun returned to the kitchen where appellant remained seated at the table. After concluding his phone call, Shaun stated, "All right. All right." Derrick stood by the sink as Shaun approached appellant with the cell phone. As Shaun handed the cell phone back to appellant with his left hand, he raised his right hand and struck appellant in the face. In response, appellant fired his gun twice, wounding both Derrick and Shaun. The wounded men fled toward the front door, but Shaun, who had been struck in the chest, collapsed at the door and died. Derrick, who had been struck in the forearm, ran home.

Appellant testified he fired his gun to get the Bynums "off him" and because he feared they might be armed. He noted that Derrick appeared to be "rushing" toward him at the time Shaun struck him. He acknowledged, however, he saw no bulges in the brothers' clothing or any other indication the men were carrying weapons.

After hearing the evidence, the trial court found Trey to be the most credible witness and noted he testified Derrick never moved toward appellant. The trial court observed further that the bullet's entry into the back side of Derrick's forearm constituted "convincing evidence" that Derrick's arms were folded in front of him when he was shot. As the trial court found no reason, based upon the "way the Bynums presented themselves and the way they were dressed,"[2] for

carrying a weapon. Appellant also noted that the Bynums' mother had told appellant about the weapons they carried.

[2] Derrick was dressed in a "wife beater and shorts," and Shaun was wearing a t-shirt and pants.

appellant to believe they were armed, it determined appellant's response to being struck was "unreasonable" and "excessive."

Having rejected appellant's argument he shot the Bynums in self-defense, the trial court convicted him of voluntary manslaughter and unlawful wounding. This appeal followed.

ANALYSIS

Appellant raises three arguments on appeal. First, he contends the evidence was insufficient to find him guilty of either offense because he acted in self-defense. Second, he argues the trial court erroneously applied a "three-prong" test in determining whether he acted in self-defense. Finally, he asserts the trial court erred by applying an "objective standard of reasonableness in determining whether [he] acted out of fear of injury."

We begin by addressing the second and third issues, both of which pertain to whether the trial court applied the correct legal standards in rejecting appellant's self-defense claim.[3]

With respect to the second assignment of error, appellant points out that the trial court made comments at the sentencing hearing indicating it employed an incorrect "three prong test" during the guilt phase in deciding whether appellant acted in self-defense. Appellant contends the trial court's comments reflect it mistakenly applied an excusable homicide analysis, an analysis that required appellant to retreat or take affirmative steps to avoid further conflict before defending himself. Specifically, appellant refers to the trial court's comments that

> a couple of things have to happen before you shoot someone. . . .
> [O]ne, you have to ask them to leave. Two, you've got to call the
> police if you have the opportunity if they don't leave. And then,
> three, you've got to brandish the gun to try to make them leave and

---

[3] Appellant also argues that the "trial court improperly sustained the Commonwealth's objection when appellant's counsel attempted to question appellant's son about why he was afraid of the Bynums[.]" As that evidentiary ruling is not included in the assignments of error, we decline to address that issue. See Rule 5A:20(c). Likewise, we do not consider appellant's assertion that the trial court erred by failing "to consider that the appellant had the same right to defend his son as he did himself" because the assignments of error do not raise this specific issue.

face the consequences of that, if any. And if things don't go as they should, then perhaps you have to use the gun. None of those things happened in this case.

The Commonwealth responds that the foregoing excerpt does not fairly represent the trial court's comments or the context in which they were made. It contends the trial court was not articulating the legal standard for self-defense, but instead, was responding to appellant's contention that the circumstances of the crime did not warrant incarceration. We agree with the Commonwealth.

After making the comments cited above, the trial court went on to explain that

> I don't think this is a case for a suspended sentence, Mr. Linka. I also don't think it's a case for the maximum, which is what the family wants, and that's certainly understandable. . . . I think Mr. Flowers is guilty of what he was charged with. He exercised very, very bad judgment. Mr. Bynum is dead and his brother is wounded. And I think some time has to be served for that, if for no other reason than so that anyone else who may hear about this will not make the same mistakes in judgment that Mr. Flowers has made.

When appellant suggested these comments indicated the trial court had incorrectly applied this "three-part analysis" in convicting him, the trial court explicitly stated this analysis was not the basis for its verdict.

> THE COURT: All right. He is revisiting the guilt phase.
>
> [THE COMMONWEALTH]: Yeah. In response, the Court was very clear on the record at the time of trial as to the analysis and employed the appropriate analysis in why you convicted him. I think what the Court stated today is what the Court thought and considered about in reference to what is an appropriate sentence.
>
> THE COURT: Exactly.

However, when the trial court assessed appellant's argument he acted in self-defense at the guilt phase, it summarized the law as follows:

> [T]he law of self-defense is the law of necessity, and I think the word necessity is key. If it reasonably appears to a defendant that the danger exists, he has the right to defend against it to the same

extent and under the same rules as would obtain in a case – in case the danger is real.

The defendant may always act upon [the] reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted. But I don't think the defendant gets to judge for himself what is reasonable. I think reasonable implies reasonable under the circumstances, and not just from the point of view of the defendant.

"'A trial court is presumed to apply the law correctly.'" Breeden v. Commonwealth, 43 Va. App. 169, 188, 596 S.E.2d 563, 572 (2004) (quoting Shenk v. Shenk, 39 Va. App. 161, 169, 571 S.E.2d 896, 900 (2002)). Nothing in the trial court's ruling indicates it assumed appellant was obliged to retreat or take affirmative steps to avoid a conflict with the Bynums prior to defending himself. After finding that Shaun struck appellant, the trial court never stated appellant acted improperly by defending himself; rather, it found that "the response of Mr. Flowers to what happened was unreasonable and excessive."

Appellant argues further, however, that the trial court erroneously applied an objective test to his actions in determining whether appellant's response was appropriate. Appellant submits the appropriate inquiry in assessing whether his response was proportionate to the threat was "not what a reasonable man would have believed, but what [*he*] believed." Citing his belief that both brothers were assaulting him and his knowledge they "sometimes" carried weapons, appellant contends the trial court erred in deciding his use of a firearm was excessive.

It is well settled that "'a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault.'" Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989) (quoting Jackson v. Commonwealth, 96 Va. 107, 113, 30 S.E. 452, 454 (1898)). However, this privilege is "limited by the equally well recognized rule that a person 'shall not, except in extreme cases, endanger human life or do great

bodily harm.'" Id. at 421, 382 S.E.2d at 26 (quoting Montgomery v. Commonwealth, 98 Va. 840, 843, 36 S.E. 371, 372 (1900)).

> [A] defendant must reasonably fear death or serious bodily harm to himself at the hands of his victim. It is not essential to the right of self-defense that the danger should in fact exist. If it reasonably appears to a defendant that the danger exists, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real. A defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted.

McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

> These ancient and well-established principles have been recited to emphasize the subjective nature of the defense, and why it is an affirmative one. As Chief Justice Hudgins pointed out in Harper v. Commonwealth, 196 Va. 723, 731, 85 S.E.2d 249, 254 (1955): "'What reasonably appeared to the accused at the time of the shooting, as creating the necessity for his act, is the test and not what reasonably appeared to him, provided it would so appear to some other reasonable person under similar circumstances.'"
>
> *The subjective belief of the defendant, without more, however, is insufficient to establish self-defense.*
>
> In dealing with apparent danger the jury should be told that before an accused is justified in making an attack with a dangerous weapon upon his adversary he must honestly believe and must have reasonable cause to believe that he was in imminent danger of losing his life or suffering serious bodily injury. . . . "*The bare fear that a man intends to commit murder, however well grounded, unaccompanied by any overt act indicative of such an intention, will not warrant killing the party by way of prevention.*"

Peeples v. Commonwealth, 30 Va. App. 626, 637, 519 S.E.2d 382, 387 (1999) (some citations omitted) (emphasis added).

Here, the trial court, acting as fact finder, was entitled to assess the credibility of the witnesses and to conclude that, contrary to appellant's testimony, Derrick was not joining in the assault at the time appellant fired his weapon. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded

the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.").  Likewise, based on appellant's testimony he saw no bulges in the Bynums' clothing or any other evidence of a weapon, the trial court could rationally conclude, viewing the circumstances from appellant's viewpoint, that appellant had only a "bare fear" the Bynums might be armed, and, therefore, could not reasonably conclude from a single blow he was threatened with death or serious bodily harm.  Cf. Gilbert v. Commonwealth, 28 Va. App. 466, 471, 506 S.E.2d 543, 545 (1998) (assailants openly threatened to kill defendant after beating him so severely he "could barely walk").

Finally, we turn to appellant's assertion the evidence was insufficient to support his convictions because he fired his gun in self-defense.  "Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt."  Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citing McGhee, 219 Va. at 562, 248 S.E.2d at 810).  "[T]he right to use deadly force in self-defense 'begins where the necessity begins and ends where it ends.'"  Couture v. Commonwealth, 51 Va. App. 239, 251, 656 S.E.2d 425, 431 (2008) (quoting Thomason v. Commonwealth, 178 Va. 489, 498, 17 S.E.2d 374, 378 (1941)).  "'The law does not clothe [the defendant] with authority to judge arbitrarily of the necessity.  He cannot kill, except in case of actual necessity, and whether or not such necessity exists is a question for the [fact finder].'"  Id. at 250, 656 S.E.2d at 431 (quoting Hendricks v. Commonwealth, 163 Va. 1102, 1110, 178 S.E. 8, 11 (1935)).  "A trial judge's factual findings will not be disturbed on appeal unless plainly wrong or without evidence to support them."  Smith, 17 Va. App. at 71, 435 S.E.2d at 416 (citation omitted).

As competent and credible evidence supported the trial court's decision that appellant used excessive force by shooting two apparently unarmed men in response to one of them

striking him in the face, the trial court properly rejected appellant's plea of self-defense. Accordingly, the evidence was sufficient to support appellant's convictions for voluntary manslaughter and unlawful wounding.

<u>Affirmed.</u>